A. W. Luckett and N. M. Luckett vs. Nath'l Townsend and Thos. A. Moore — Error from Fayette County.

A writ of error, as recognized by our law, is one of the modes prescribed for bringing up a cause for revision. The whole case, embracing the facts as well as the law, is brought up by this mode as well as by appeal.

In the absence of a statement of facts, every presumption is in favor of the verdict; but when the verdict is repugnant to the admissions in the pleadings, there is no necessity of a statement of facts to show that the verdict is wrong. Nothing can be presumed to have been proved which could not legally have been proved under the pleadings.

A conditional sale passes the title to the vendee in the first instance, with a reservation to the vendor to re-purchase at a fixed price and in a specified time.

A mortgage is a conditional transfer of property, which becomes absolute in law if the condition be not performed.

A pledge or. pawn is a deposit of goods, redeemable on the terms prescribed; it gives no right to the pawnee except that of possession, and as a security for the debt for which the pledge was made.

A mortgage is a pledge, and more. It is an absolute pledge, *to become an absolute interest* if not redeemed at a certain time. A pledge is a deposit *not to be taken back* but on the payment of a certain sum. [11 Tex. 479.]

In the case of a mortgage, the *legal* property passes to the mortgagee, with a right of defeasance. The *possession* need not accompany the mortgage. In a pledge the general property does not pass to the pawnee; he acquires only a right to the *possession and use*. The possession must follow the pledge.

A pawnee has two remedies when his debt is due and the pawn is not redeemed. He may foreclose and have a judicial sale, or he may sell without foreclosure upon giving reasonable notice to the debtor. This notice is, however, indispensable, and the sale must be at auction. [5 Tex. 318.]

A stipulation in a contract of pawn, that if the pawn be not redeemed within a specified time the right of property shall be absolute in the pawnee, can have no effect. Such a stipulation is inoperative to vest in the pawnee an absolute right of property.

The purchaser of property pawned, after the time when it should have been redeemed, acquires no higher right than the pawnee possessed.

An assertion to an absolute· right on the part of the pawnee to the thing pawned, or a sale of it to another, dispenses with the necessity on the part of the pawnor to make a tender of the amount of the debt, to entitle him to his action to recover the pawn. [4 Tex. 311; 6 Tex. 515; 18 Tex. 198.]

It is competent for an appellate court to reverse the judgment of the court below, and remand the cause for a new trial, notwithstanding the number of new trials which the law allows to the party had previously been granted by the court below. [20 Tex. 164.]

This was a suit brought by the plaintiffs in error in the ·county of Travis to redeem a negro boy, alleged by them to have been delivered to the defendant, Townsend, in mortgage ·or pledge.

The plaintiffs filed their petition on the 10th of December,

1841, alleging that on the 13th of November, 1840, they borrowed of the defendant, Townsend, one thousand dollars in the old consolidated funded debt of the republic, equal in value to one hundred and twenty-five dollars. That, to secure the payment, they executed a conveyance and delivered to Townsend a negro boy worth $800, to be held as security for the payment within six months of $200, in lieu of the $1,000 of funded debt, with the privilege of extending the time of payment to twelve months, by permitting the boy to remain in the possession of Townsend; that at the expiration of the time, being unable to procure the $200 in money, and the defendant refusing to receive Texas promissory notes or government liabilities, they obtained from him an extension of the time of payment to the first day of December, 1841, the boy remaining in his possession; that at the expiration of this period, being unable, in consequence of the absence of specie from the country and pressure of the times, to procure the good money, they tendered to the defendant an amount of Texas bonds whose current value was more than the original sum borrowed, with interest, deducting the hire of the boy; that the defendant refused to receive the amount so tendered, alleging that the boy had become his property absolutely by the contract, which the plaintiffs allege is contrary to its true intent and meaning. They further allege that the hire of the boy was worth one hundred and twenty-five dollars in good money, and that they "hereby offer and tender" the sum borrowed, with interest. They charge that the defendant is about to remove the boy beyond the jurisdiction of the court, or to dispose of him in fraud of their rights. They pray an injunction and sequestration, and that they be permitted to redeem upon payment of the debt and interest, and that the defendant account for the value of the hire of the boy.

The answer of Townsend, filed at the September term, 1842, admits the advance of the $1,000 in the consolidated fund of the republic to the plaintiffs, but alleges that it was of the value of $200. That the advance was made upon the agreement by the plaintiffs to pay him that sum within six months, and upon

their placing in his possession the negro boy in question, with the understanding that his services should be received in compensation for the use of the $200; that it was further agreed, at the instance of the plaintiffs, that, should the money not be returned within the six months, the time of payment was to be extended to twelve months, he retaining the possession of the negro; and if not then made, the boy was to be his property. He alleges that, his circumstances requiring the use of all his means, he would not have deprived himself of the $1,000 of consolidated fund for the term of twelve months, for the consideration of the services of a boy of thirteen years of age; and was only induced to agree to the extension of the time of payment from the six to the twelve months by the voluntary offer of the plaintiffs, that, if the money was not paid in that time, the boy should be his *bona fide* property; and the $200, and the injury he would sustain by its not being returned, should be considered a full consideration for his value; that at the expiration of the six months, and also at the expiration of the twelve months, he repeatedly called upon the plaintiffs, and urged them to pay him the money, or return other stock of equivalent value to the consolidated fund advanced by him, and receive the boy; as he preferred taking the money or the stock to having the absolute property of the negro, as stipulated in the contract; but that they at all times neglected and refused to do so; and that being compelled to raise funds, after the expiration of the twelve months, he was forced to sell the boy, under the agreement made with the plaintiffs, that he was from that period to be considered his own property. He denies that the plaintiffs ever tendered the money or stock, or fund, equal in value to that advanced. He admits that they spoke of returning the same amount of consolidated fund which he advanced, and three hundred dollars in Texas promissory notes; but that the consolidated fund having materially depreciated in value, and the Texas notes not being equivalent for that depreciation, he refused to receive it unless a sufficient amount was offered, to be equal in value to that advanced at the time the advance was made; which they refused to do. He

denies that any tender was made. He exhibits the contract as a part of his answer, the material stipulations of which are, that the plaintiffs had hired him a negro boy named Richard, aged thirteen years, upon the following terms and conditions, viz.: "The said Townsend having this day paid us the sum of two hundred dollars, the receipt whereof is hereby acknowledged, for and in consideration of the use of which the said Townsend is to have the services of the aforesaid boy during the term of six months; and should the said sum of money not be returned to the said Townsend at the expiration of the aforesaid time, he is to retain the possession and have the services of said boy until it is paid. But in the event the aforesaid sum of money is not paid to said Townsend within twelve months from this date, the said slave is hereby declared to be the *bona fide* property of said Townsend; and this instrument shall have the force and effect of a bill of sale." It contains some other stipulations not now material; is dated on the 13th November, 1840, and signed by the present plaintiffs.

After this answer, on the 14th of April, 1843, the plaintiffs obtained leave and amended their petition; alleging that the defendant, Townsend, had sold or in some way disposed of the boy to one Thomas A. Moore; that he (Moore) had possession of the boy, and was apprised of the plaintiffs' rights; and they pray process and relief against him.

At the September term, 1844, the defendant, Moore, answered. His answer admits that he had purchased of Townsend the boy in question; that "he had no knowledge of the original transaction between the parties, except such as was derived from rumor and from conversations with the parties, subsequent to said transaction, and about the time he became the purchaser of said negro boy Richard; but he believes, and so understood at the time, that the said transaction was as it has since been stated by said Townsend in his answer to complainants' bill, and now on file among the papers and documents in this cause; this defendant understood, and verily believed at the time he purchased said boy from said Townsend, he was the *bona fide* property of said Townsend; and that said complain-

ants did not, and would not, pretend to urge any further claim or right to him." He sets forth his understanding of the contract substantially as it is stated in the answer of Townsend, and declares his belief that the property thereby became the absolute property of Townsend; and so believing, he purchased him for the sum of $300, paid in other property.

There was a trial in the county of Travis, which resulted in favor of defendants; a new trial was granted, and, by consent, the cause was transferred to the county of Bastrop. At the fall term, 1845, of the Bastrop district court, the cause was again tried, with a similar result to that of the first trial, and another new trial was granted. By agreement of parties, the cause was then transferred to the county of Colorado, and subsequently from that to the county of Fayette, where it was again tried at the fall term, 1846, and again resulted in a verdict and judgment for the defendants; to reverse which the plaintiffs prosecuted this trial of error.

GILLESPIE for plaintiffs in error.

The decree or judgment of the court below is erroneous. The bill, answers and exhibits established a mortgage; it was a contract to secure the payment of money. Every proposition in the instrument shows that the parties, at the time of contracting, considered it as a mortgage; if so, no subsequent agreement would alter the character of the contract. If once a mortgage, always a mortgage. [Clark vs. Henry, 2 Cowen, 330; 1 Powell on Mortg. 5; 2 Johns. 30.]

The character of the instrument is to be determined by the intention of the parties at the time of making the contract; and if, in it, any provision is made for the re-payment of money, this makes it a mortgage, and gives to the mortgagor the right of redemption [4 Kent, 141–2, and references]; and when once ascertained, then all the consequences to a mortgage are to be observed, and the right of redemption is an inseparable incident. [Id. 158.] The power of enforcing the right of redemption is an equitable power. If there be no distinct equity court, the power is to be exercised upon equitable principles in courts of law. [2 Story's Equity, 272; 4 Kent, 162, and note.]

A mortgagee in possession is surrounded with duties and obligations analogous to those of a trustee; he is responsible for the profits; he can make no gain out of the estate which he holds merely for his indemnity. [4 Kent, 167, and note 13.]

The contract to be expounded was in writing, without any ambiguity, and was alone for the court to construe. [1 Powell, 5, note; 2 Powell, 807, n.; 3 Phil. 1420; 3 Black, 439, side.]

The jury was impaneled under the act of 1841, page 82, for the information and aid of the court, to settle such matters as were not contained in the written contract.

Moore could not protect himself under the plea of being an innocent purchaser without notice; he must stand before the court in the same position as his vendor. He admits that he was apprised of circumstances which should have put a discreet and prudent man on his guard. [1 Peters' Digest, p. 428, secs. 143-4; Miller on Mortg. 56; 1 Cowen, 642, and references.]

These parties being all before the court, it is a well established principle of equity that the court will adjudicate and settle all the matters in controversy.

WEBB for defendant in error.

On a writ of error, nothing is brought up for revision except errors of law apparent upon the record. The facts in the cause can only be brought up by appeal. [1 Tomlin's L. Dic. 647; 1 Florida R. 275; 7 Cranch, 108; 1 Peters' R. 183; 5 U. S. Cond. R. 118; 4 id. 66.]

The record exhibits no error committed by the judge on the trial of the cause. There is no bill of exceptions or statement of facts. The whole proceeding, for aught that is shown to the contrary, was conducted according to the strictest principles of law. It is incumbent on the plaintiffs to show that there is error; "every reasonable intendment is in favor of the judgment." [10 Peters' R. 171; 5 Peters' R. 438; 1 Peters, 23; 13 Peters, 447.]

The court will presume (there being no statement of facts) that the jury had all the testimony before them which was necessary to authorize and sustain the verdict, even if this matter can be inquired into on error. [1 Flor. R. 281, 296.]

Under the pleadings, evidence may have been introduced to entitle the defendant, Moore, to a verdict; because he alleges in his answer that, at the time of his purchasing the negro, he believed, from conversations *with the parties*, that the Lucketts had no right, and would set up no further claim to him. Now, if it was proved at the trial that the Lucketts, in their conversations with him, had induced this belief, and led him to suppose that they would assert no further claim to the negro, and that he would be safe in purchasing from Townsend, they could not recover from him in an equity suit, whatever may have been their rights as against Townsend. In this suit they could not recover even against Townsend, because they ask for nothing but a decree restoring the negro, which was the property of Moore.

But I do not admit that they could recover against Townsend in any form of action. The contract was a *conditional* sale, not to become *absolute* until a future period, and which might then be annulled by the performance of certain acts by the plaintiffs. This is shown by the expressions in the instrument executed by the plaintiffs to Townsend, that "*the said slave is hereby declared to be the bona fide property of said Townsend, and this instrument shall have the force and effect of a bill of sale.*" The contract was such that the plaintiffs could force upon Townsend the character of purchaser at the expiration of twelve months, whether he desired it or not, and he could not relieve himself from that character; and if he could not elect to regard it as a purchase upon the non-performance of the conditions, the contract had no reciprocity. The plaintiffs did force upon him the character of purchaser, contrary to his wish. [See the answer.]

But if the contract be regarded as a mortgage, the plaintiffs are not benefited by it. Being a mortgage of *personal property*, the mortgagee had a right to sell upon the condition being broken. He was not compelled to foreclose, as he would have been had it been real estate. [1 Powell on Mort. p. 3; 3 id. 962; note 1, 963; Flor. R. 269, 270; 2 Vesey, Jr. 378.]

If we consider Townsend merely a pawnee under this con-

tract, still the plaintiffs cannot recover. It is true the legal title to property pledged for the security of a debt does not, by the mere act of the pledge, pass to the pledgee; but the possession, and right of possession, do; and that possession cannot be disturbed by the pawnor until the money is paid or actually tendered. [2 Vesey, Jr. 378.]

In this case there was neither payment nor tender. [5 Bacon's Ab. (fol. ed.) pp. 1, 4, 18.]

If, upon proper tender, the pawnee refused to restore the pledge, the pawnor might bring his action of detinue or trover; but in doing so, the money tendered must be paid into court to entitle him to recover. [15 Mass. R. 387.]

It is no objection that the pawn (if this be considered one) was transferred to Moore. Townsend had a right to make the transfer; and Moore, had he known the title of Townsend to be only that of a pawnee, would have received the negro with all Townsend's rights, but subject to the plaintiffs' right of redemption upon the payment of the money. [Story on Bail. secs. 324, 327; 15 Mass. R. side p. 409.]

There is a legal principle connected with the contract of pawn different from that connected with the contract of an ordinary mortgage. In a pawn, the parties make their own contracts and stipulations, and the courts enforce them *according to the contract*. In a mortgage, the law regulates the rights of the parties, and the courts enforce those rights *according to law*. If a pawnor stipulate that the pawnee may sell, he has a right to sell without further authority; if he stipulated that the pawnee shall become the owner in a particular event, upon the happening of that event he becomes the own . [Yelverton's Rep. 179, let. a, n. 1; 10 Johns. 471–4; Story on Bailments, p. 205; Ayliff's Pandects, pp. 529, 530, 532; Cortelyon *vs.* Lansing, 2 Caines' Cas. in Er. 206.]

In this case the Lucketts stipulated that, if they did not pay Townsend $200 in twelve months, the negro was Townsend's property; and if it be a pawn, they had the right to make the stipulation; and upon their failure to pay, the right of Townsend to the property was fixed by their own contract.

In no point of view can the plaintiffs recover. If, in any event, they could redeem as against Moore, they should have tendered the money and brought it into court. He who seeks equity must do equity; or, at least, show a willingness to do it. The allegation that the hire of a boy thirteen years old was worth more than the use of the money amounts to nothing; because it is denied, and there is no proof to sustain it. Besides, one of the juries which sat on the trial of this case, and before which the issue was distinctly made, say that the hire was worth no more than the interest. If they are entitled to recover from Townsend the difference between the $200 and the real value of the negro, or the price which he obtained from Moore for him, it must be done in a different action. This suit seeks no such recovery.

The object of the plaintiffs in bringing the cause into this court, doubtless was to get it remanded for a new trial in the court below; and if, in any case, such object could be attained upon a writ of error, where the whole complaint is against the verdict of the jury and not against any decision of the judge, still, in this case, it cannot; because the statute expressly declares that there shall not be more than two new trials granted to either party in a cause; and the record shows that the plaintiffs have already had two new trials granted them in this. [4 vol. Laws Texas, p. 91, sec. 26.] If this court grant them another, it must make a law to give them what the law (as the legislature has made it) says they shall not have. The district court could not have granted it without violating the law; and to enable this court to do it, it must reverse the judgment of the district court, because it did not violate the law.

Mr. Justice WHEELER, after stating the facts of the case generally, delivered the opinion of the court as follows [Mr. Justice LIPSCOMB not sitting]:

It is insisted for the defendant in error, that, as the case is brought up by writ of error, we cannot look into the facts as upon appeal, or revise the judgment otherwise than as upon a writ of error at common law.

This, it is conceived, is not now an open question. It is be-

lieved to have been the uniform practice of the late supreme court, as well as of this court, to regard the writ of error, as recognized by our laws, only as another mode of bringing up the cause for revision as upon appeal. In Cheeks vs. Rogers [1 Texas R. 440], it was expressly decided by this court, that where the facts are properly presented in a case brought up by writ of error, they will be subject to the cognizance and revision of this court, in the same manner, and to the same extent, as in the case of an appeal.

In the case before us there is no statement of facts. But the contract is fully set forth in the answer, and the material facts are deducible from the allegations and admissions of the parties in their pleadings; particularly from the statements and admissions in the answer of the defendants. There was no necessity that the plaintiffs should have embodied, in a statement, the facts which are thus admitted of record. It is true, as insisted for the defendants, that every reasonable intendment is in favor of the judgment; but it is also true that there can be no intendment of fact in favor of a party, against his own allegations and admissions in the record. There being a verdict for the defendants, and no statement of facts, we must indeed presume, in support of the verdict, everything to have been proved by the defendants which they legally could have proved under the pleadings. We must presume that there was proof of the truth of the matters set forth in the answer; but we cannot go beyond this. We cannot presume any matter to have been proved which was not averred. That would be to supply by intendment what must appear in the record.

The answers of the defendants being taken as true, the question to be determined in this case is, do they show enough to support the judgment? By their own statements, were the defendants entitled to the verdict and judgment rendered in their favor?

The determination of this inquiry and the final disposition of this case must depend upon —

1st. The nature of the contract as disclosed by the answer.

2d. The rights of the parties, respectively, growing out of the contract; and

3d. The authority of this court to reverse and remand the cause for a new trial, when the plaintiffs in error have already had two new trials allowed them by the court below.

1. Respecting the first point, it is insisted for the plaintiffs that the contract is to be deemed a mortgage; and by the defendants that it is a conditional sale.

That it is not the latter, is evident from the express terms and clear import of the contract. It does not profess to pass the title in the first instance, but the possession and use only; whereas a conditional sale passes the title to the vendee, with a reservation to the vendor of a right to re-purchase the property at a fixed price and specified time. [7 Cranch, 218; 4 Kent's Com. (3d ed.) 144.]

Whether the contract is evidence of a mortgage, or a pledge only, will be apparent by reference to the legal definition of each, and the distinction which is recognized by the law between a mortgage and a pledge of personal property."

"The former is a conditional transfer or conveyance of the property itself; and if the condition be not performed, the whole title vests absolutely at law, exactly as it does in the case of a mortgage of lands. The latter only passes the possession, or, at most, a special property only to the pledgee, with a right of retainer until the debt is paid, or the other engagement is fulfilled." [2 Story's Eq. sec. 1030; 4 Kent's Com. 128.]

"A mortgage of goods differs from a pawn or pledge in this: that the former is a conveyance of the title upon condition" [4 Kent's Com. 138], and it may be valid without actual delivery. [Id.] "A pledge or pawn is a deposit of goods redeemable on certain terms." [Id.] "Delivery is essential to a pledge." [2 Caines' Cas. in Er. 206; Yelverton, 197, note 1, Am. ed.; 2 Ves. Jr. 378.]

A mortgage, it has been said, is a pledge, and more; for it is an absolute pledge, to become an absolute interest if not redeemed at a certain time; a pledge is a deposit of personal

effects, not to be taken back but on payment of a certain sum, by express stipulation or the course of trade made to be a lien upon them. [2 Ves. Jr. 378.] In the case of a mortgage, the legal property passes with a condition of defeasance; in that of a pledge, the general property does not pass, but remains with the pawnor. [2 Caines' Cas. in Er. 206.]

It is this characteristic of the contract in the present case which distinguishes it from ⌐ mortgage, and brings it within the definition of a pledge. It does not pass the general property to the pledgee, but the possession and use only. The mortgage and the pledge or pawn of goods have, however, it has been remarked, generally been confounded. [Yelverton, 179, n. 1, Am. ed. by Metcalf.] They are, indeed, in most respects, subject in equity to the same rules; the mortgage being considered in equity but a pledge or security for the payment of the debt, or the discharge of the other engagements, for which it was originally given. [2 Story's Eq., secs. 1013, 1014, 1015.]

Having determined the character of the contract to be that of a pledge, in the present case, it becomes essential to ascertain —

2. What are the respective rights of the parties under this contract? And upon this point, it is insisted for the defendants in error, that, upon the failure of the plaintiffs to pay the debt at the time stipulated, the right of property, by the law of the contract, considered either as a pledge or a mortgage, became absolute in Townsend; at all events, that the stipulation in the contract to that effect is valid and must be adhered to.

It is clear, says Story [Story on Bailments, sec. 346], by the common law, that in cases of pledge, if a stipulated time is fixed for the payment of the debt, and the debt is not paid at the time, the absolute property does not pass to the pawnee; and this doctrine is as old as the time of Glanville. [2 Glanville Lib. 10, ch. 6; 2 Caines' Cas. in Er. 200; Yelv. 178.]

Kent asserts the same as having been the doctrine of the common law; and he adds, "the pawnee was obliged to have recourse to process of law to sell the pledge; and until that

was done the pawnor was entitled to redeem." [2 Kent's Com. 581; 2 Story's Eq. sec. 1032.]

But the English law now is, that, when the debt is due, the pawnee has the election of two remedies. He may have a judicial sale under a decree of foreclosure; or he may sell without judicial process, upon giving reasonable notice to the debtor. For the pawnee is not now bound to wait for a sale under a decree of foreclosure, as he is in the case of a mortgage of land. [2 Kent's Com. 581.] But without any bill to redeem, the creditor on a pledge or mortgage of chattels may sell at auction, on giving reasonable opportunity to the debtor to redeem, and apprising him of the time and place of sale. [4 Kent's Com. 139; 2 Story's Eq. sec. 1031.]

The notice to the party in such cases is, however, indispensable. [1 Browne (Pa.), 176; 2 Caines' Cas. in Er. 200; 2 Story's Eq. 1033, n. 4, 3d ed.] And the creditor (says Kent) will be held at his peril to deal fairly and justly with the pledge, both as to the time of the notice and the manner of the sale. [2 Kent's Com. 583.]

Respecting the stipulation in this contract, that, upon failure to make prompt payment, the title to the boy should become absolute in Townsend, the law is well settled that it can be of no effect.

Every agreement, says Kent, preventing the right of redemption in mortgages of chattels, as of lands, would no doubt be equally condemned in the English law. [Id.]

If, says Story, a clause is inserted in the original contract, providing that if the terms of the contract are not strictly fulfilled at the time and in the mode prescribed, the pledge shall become irredeemable, it will not be of any avail; for the common law deems such a stipulation unconscionable and void, upon the ground of public policy, as tending to the oppression of debtors. The civil law treated a similar stipulation in the same manner, holding it to be a mere nullity. [Story's Comm. Bailments, sec. 345; Hart vs. Burton, 7 J. J. Marsh. 322.]

According to those principles, the stipulation, intended in the present case to defeat the right of redemption, must be re-

garded as wholly ineffectual to accomplish that end, and inoperative to vest in the pledgee an absolute right to the property.

It is thus apparent, from an application to the case of the ascertained principles of the law upon this subject, which we have freely extracted from the pages of Kent and Story, that, upon the failure to pay the money at the time specified, the right of property in the boy in question did not vest absolutely in the defendant, Townsend, but he continued still to hold him as a pledge; and the right of the plaintiffs to redeem still subsisted, and continued up to the period of the commencement of this suit, unless defeated by the sale of the boy by Townsend to Moore; and hence the effect of this sale necessarily becomes the subject of inquiry.

It is not pretended that this was a public sale at auction, or that the plaintiffs had any notice of it whatever. We are even now uninformed as to the time and place at which this sale was made. The defendants have not seen proper to disclose the facts connected with it; because, we must suppose, they deemed that silence upon that subject would most conduce to their advantage. They leave the circumstances attending the sale entirely out of view in their answer, insisting on their understanding that by the *law* of the contract the property became absolute in Townsend.

Conduct like this does not comport well with the rules which the pawnee was bound to observe in the sale of the thing pledged. These, we have seen, require that the sale be a public sale; that due notice be given to the debtor of the time and place of sale; and that the creditor, at his peril, shall deal fairly and justly, both as to the time of the notice and the manner of the sale. If, says Story, the pledgee should undertake to make a transfer of the pledge to his own creditor, as if he was absolute owner, in such a case he would be guilty of a breach of trust, and his creditor would acquire no title beyond that held by the pawnee. Indeed, the only question, he says, which would seem to admit of controversy is, whether the creditor would be entitled to retain the pledge until the original debt was discharged; or whether the owner

might recover the pledge, as if the case was a naked tort, without any qualified right in the first pledgee. [Story on Bailments, sec. 324.]

At most, Moore, in this case, could but acquire the title of his vendor. He could acquire no greater or better title, according to the maxim, "*Nemo plus juris ad alium transferre potest quam ipse huberet.*" [Id. sec. 328.] His purchase was made, as appears by his own admissions, with a full knowledge of the facts as disclosed in the answer of his co-defendant, and he certainly can occupy before the court no better position than the latter.

The rights of the plaintiffs, therefore, were in no way impaired or affected by the sale in question.

But it is insisted that the action cannot be maintained, on account of the failure of the plaintiffs to make a tender of the debt before the institution of the suit.

However this might have been before the sale and claim of absolute property by the defendants, it is clear that these acts dispensed with that necessity.

If, says Story, the pledge has been sold by the pledgee without any proper notice to the former, no tender of the debt due need be made before bringing an action; for the party has incapacitated himself to comply with his contract to return the pledge. And the same rule applies where the pledgee dispenses with a tender, as if he refuses, under any circumstances, to restore the pledge [id. sec. 439]; and *a fortiori* where, as in this case, he claims the absolute property in the pledge. The action may be brought, in these cases, without a tender, and the pledgee may recoup his debt in the damages. [*Ibid.*]

3. In view of the whole case as presented in the record, and considered in reference to every objection which has been urged on behalf of the defendants, we are brought to the conclusion that the law of the case is with the plaintiffs; that they were entitled to recover upon the facts disclosed by the defendants, themselves, in their answers; that the verdict is manifestly against law, and that it ought to be set aside and a new trial awarded; provided we are authorized to remand the cause for

a new trial, when two new trials have already been allowed the plaintiffs by the court below. And this is the only remaining inquiry.

There is no novelty, and, in reference to the authorities, I am warranted, I think, in saying there can now be no difficulty in the determination of this question. The right to remand a cause under circumstances like the present has, it is believed, been uniformly maintained in every country where, as with us, the right of trial by jury is guarantied and secured by the constitution and laws.

In Kentucky it is held that the act of 1796 of that state, which declares that "not more than two new trials shall be granted to the same party in the same cause," does not so operate as to prevent the court of appeals from re-examining the questions of law, and reversing and remanding the cause for a new trial after three or more verdicts for the same party. [1 Dana, 62.] The same point was also decided in Burton *vs.* Brashear [3 Marshall, 278].

In the case of Means *vs.* Moore [3 McCord, 282], and in various other cases, the court of appeals of South Carolina have held that they will always exercise a controlling power of granting new trials; and that so long as the jury will continue to find contrary to law, they will continue to grant new trials. In the last cited case the court say: "The right to control a verdict, under such circumstances, has always been claimed and maintained in this and in every other country where the laws have been properly administered." [Id. 388; 1 Bay, 269; 2 id. 23, 131; 2 McCord, 26; 3 id. 132; 1 Johns. Cas. 336; 10 Yerger, 499; 1 Meigs, 163.]

Authorities might be multiplied to the same effect. The court, indeed, must exercise this right, or give up the law to the will of the jury.

The boundaries of jurisdiction between the court and jury are well defined; and the value of this venerated institution of trial by jury must depend upon keeping it within its ancient recognized and well ascertained limits.

The court will never trench upon the right of the jury to re-

spond to questions of fact; but it must not be forgetful of its own duty to respond to questions of law.    It would be as much an usurpation in the jury to undertake the exposition of the law, as in the court to wrest from them the trial of the fact.

In the case before us, every point submitted presents a question of law.    None others are contested.    And upon few subjects is the law better settled or more clearly defined.    There can be no doubt that the verdict is contrary to law.    And unless we are prepared to concede that a given number of unauthorized and illegal verdicts can indeed change the law of the land, the line of our duty cannot be mistaken.

We are of opinion that the judgment be reversed, and the cause remanded for a new trial.