W. B. KING & Co. v. T. B. & Ins. COMPANY.

(Case No. 1554.)

1. BAILMENT.— The parties in interest may regulate in advance the remedy which the creditor must resort, to in subjecting property pledged to the payment of the debt which it is hypothecated to secure.

2. SAME.— The holder of property pledged for the payment of a debt may sell it, after reasonable notice, at public auction to liquidate the debt, unless the character of the

property be such as to raise the presumption that the parties intended that it should be used in some other way to raise money if necessary; as in the case of a bill of exchange or promissory note soon to mature.

3. BAILMENT — FACT CASE — PLEADING.— See opinion for allegations in an answer held not sufficient to show a waiver on the part of the pledgee of his right to sell, in default of payment, bonds hypothecated to secure the debt.

4. PLEADING.— When no time is stipulated for the payment of debt secured by a pledge of property, the law will, in the absence of something from which a contrary presumption would arise, presume that the payment is to be made on demand.

5. SAME.— The holder of property hypothecated for debt, having a legal right to sell on notice after demand, no time being fixed for payment, may sell it at public auction, and is under no legal obligation to wait until a depressed money market is better in order to obtain a higher price for the thing pledged. The parties will be presumed to have had in view the risk of fluctuation in the market when the pledge was made.

6. PLEADING.— See opinion for pleading alleging the violation of a contract with regard to the rate of interest to be paid on a debt secured by a pledge, to which a demurrer was improperly sustained.

ERROR from Galveston. Tried below before the Hon. Wm. H. Stewart.

The opinion states the case.

*Wheeler & Rhodes*, for plaintiffs in error.

I. The effect of the demurrer being to admit as true every allegation of the answer, we submit the same presented a complete defense, as well as a good affirmative cause of action in reconvention.

II. The debt was not due; reasonable notice was not given, or sufficient time given, in which to redeem.

*George E. Mann*, for defendant in error.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by the defendant in error against the plaintiff in error to recover a balance alleged to be due on two loans, after deducting therefrom the proceeds of certain bonds of the Gulf, Colorado & Santa Fe Railroad Company, which had been deposited by plaintiff in error as a pledge to secure the loan. The petition contained no averment of any express agreement that the pledgee might sell the bonds in the event of failure of the pledgor to pay the debt upon demand, but alleged that after demand for payment, notice thereof having been given to the pledgor, the bonds were sold in the city of New York at public auction, and the proceeds of sales applied to the payment of loan, interest, etc., which left due on November 3, 1881, a balance of $2,695.25.

The petition also alleged that interest was to be paid on the loans

at the rate of six per cent. per annum to date of demand, and that on the 1st day of September, 1881, the first loan, amounting to $56,000, was demanded, and that on the sixth day of the same month the demand was made for the second loan, which amounted to $30,000. Interest upon the loans from the time of demand, was claimed at the rate of eight per cent. per annum.

The account as stated in the petition, rates of interest at different times, and manner of appropriating money received from the sale of bonds, is set out in an exhibit, which is made a part of the petition, as follows:

### EXHIBIT A.

W. B. King & Co. in account with Texas Banking & Insurance Co., Galveston, Texas.

1881.

| | | | |
|---|---|---|---|
| July 1. | To loan on forty-seven G., C. & S. F. R. R. bonds of $1,000 each...................................... | | $56,000 00 |
| Sept. 1. | To interest to date at six per cent.... ............ | | 560 00 |
| Oct. 1. | To interest to date at eight per cent.............. | | 473 18 |
| | To charges paid by Bank of New York on sale of above bonds: | | |
| |     Auctioneer's fees ............................ | $127 10 | |
| |     Notary's fee............................... | 15 00 | |
| |         Total............... ................. | | $57,175 28 |
| Oct. 8. | By proceeds of above forty-seven bonds sold in New York by Bank of New York.................... | | 51,935 00 |
| | Leaving balance due this bank in the matter of the forty-seven bonds ................. ............ | | $5,240 28 |
| | To interest on $5,240.28 at eight per cent. from October 8 to November 3........................ | | 30 28 |
| | | | $5,270 56 |

1881.

| | | | |
|---|---|---|---|
| Aug. 1. | To loan on thirty bonds, same as above........... | $30,000 00 | |
| Sept. 6. | To interest from August 5th to date on above loan at six per cent........ ........................ | 125 00 | |
| Nov. 3. | To interest to date at eight per cent.............. | 415 40 | |
| | To charge paid by Bank of New York on sale of above thirty bonds — auctioneer's fees.......... | 84 32 | |
| |         Total........ ..................... | $30,624 72 | |
| Nov. 3. | By proceeds of above thirty bonds sold in New York at auction............................... | 33,200 00 | |
| | Leaving balance due W. B. King & Co. in this sale, of........................................ | | 2,575 28 |
| | Leaving balance due this bank November 3, 1881, of........................................... | | $2,695 28 |

The answer alleged the loans as charged, and that the same " was upon the following express terms and conditions: that this defendant should have the use of said money at the rate of six per cent. per annum until the 1st day of October, 1881, and thereafter at the rate of eight per cent. per annum, there being no time stipulated specifically when said money so advanced, and no authority delegated to said plaintiff to sell said bonds to repay said money by it advanced thereon, should be repaid to said bank."

After admitting the demand and notice, the answer alleged that the defendant "importuned said plaintiff not to sacrifice said securities; at the same time offered to pay the interest on said loan to date, and protesting against a sacrifice of his securities at a time when it was next to impossible to borrow money on any terms; at the same time reminding said plaintiff that it held no instrument of hypothecation or other authority to sell said bonds held by it, and that said money advanced by it was not due."

The answer further averred that the sale of the bonds by plaintiff destroyed the confidence which had theretofore existed in that class of bonds as good securities for the investment of capital, by reason of which, other parties, to whom the defendant had pledged other like bonds, seeing that the bonds were depreciating in value, advertised for sale the bonds of defendant which they held, and that to prevent their sale he had to pay a higher rate of interest, and ultimately had to sell the bonds which the parties held at a depreciated price, to settle the debts for which the bonds were hypothecated; for which he sought to recover damages as well as for loss which he claimed to have sustained by reason of the bonds which were sold not bringing as much as he claimed to be their market value.

To the answer, demurrers general and special were filed and sustained by the court. There was a judgment for the plaintiff.

The assignments of error are as follows:

"First. The court erred in sustaining the plaintiff's demurrer to the amended original answer of the plaintiff in error filed in the honorable district of Galveston county, when said cause was called for trial, and in holding, in sustaining said demurrer, that the amended answer of plaintiff in error, defendant in the court below, showed that the money loaned on bonds deposited with it as collateral security was payable in cash, and that after demand for said money so loaned, that the defendant in error was authorized, without judicial or other proceedings, with plaintiff in error's consent, to place said bonds so hypothecated on the market of New York, and force

a sale thereof for whatever sum was obtainable therefor. Because said answer and plea in reconvention negatives any such authority on the part of the defendant in error in express terms, and shows that it was not in contemplation of either party that said loan should be called in the time that said money so loaned was demanded by the Texas Banking and Insurance Company of William B. King, and because said petitioners' amended answer negatives the existence of authority in the defendant in error to make the sale of his bonds at public outcry in the market of New York.

"Second. The court erred in holding that the sale made by defendant in error of the bonds belonging to the plaintiff in error and deposited by him with it as collateral security for the money loaned, was a legal sale, the manner and place of said sale being fully stated and charged in said amended answer to have been made in New York as against the earnest protest of the plaintiff in error."

That parties by contract may regulate in advance the remedy which the creditor must pursue in subjecting property pledged to the payment of the debt which it is hypothecated to secure, cannot be questioned.

The time, mode and place of sale may be so fixed; and it has been held that the parties may agree that the property may be sold without notice and at private sale upon default of pledgor to pay the debt.

In the absence, however, of a contract regulating the matter, the person holding the pledge, in default of payment, may, upon giving reasonable notice, sell the pledged property at public auction and appropriate the proceeds to the payment of the debt, unless the character of the thing pledged be such that the law will presume that it was the intention of the parties that money should in some other way be raised from the pledge; as in the case of a bill of exchange or promissory note which matures in a short time. Schouler's Bailments, 206–217.

The rule is thus expressed by Wheeler, Justice, in Luckett v. Townsend, 3 Tex., 131: "But English law now is, that when the debt is due, the pawnee has the election of two remedies: he may have a judicial sale under a decree of foreclosure, or he may sell without judicial process, upon giving reasonable notice to the debtor. For the pawnee is not bound to wait for a sale under a decree of foreclosure, as he is in the case of a mortgage of land. 2 Kent's Com., 581. But without any bill to redeem, the creditor on a pledge or mortgage of chattels may sell at auction, on giving reasonable opportunity to the debtor to redeem, and apprising him

of the time and place of sale." 2 Kent's Com., 582; 2 Story's
Equity, 1031–1034, and citations.

We are of the opinion that the answer does not set up an agree-
ment by which the plaintiff waived his right to sell the bonds upon
default; but that the legal effect of the answer is only to deny
that the law conferred upon the plaintiff the power to sell, in the
absence of any contract upon that subject. Such is the fair import
of the language of the answer; and under the well known rule that
the pleading is to be construed most strongly against the pleader,
such we hold is the effect of the answer. If there was a contract
between the parties which varied the general rule, it was incumbent
upon the defendant to set it up.

It is claimed that the money was not due at the time of the sale,
and that therefore the sale was unauthorized, and that this was
shown by the answer. Such is not the legal effect of the answer.

The answer alleges that the defendant was to pay six per cent.
per annum interest on the money until the 1st of October, 1881, and
after that he was to pay eight per cent., and that there was no time
fixed for the payment of the debt. This is a sufficient averment,
perhaps, that the money was not to be paid before the 1st of Octo-
ber; but when there is no stipulated time for payment, the law, in
the absence of something from which a contrary presumption would
arise, would presume that the payment was to be made upon
demand.

The answer does not allege that New York was not a proper
place to sell the bonds, nor that they would have brought more in
some other place; but upon the contrary, does allege that New York
" was the center of capital of the United States." Such a place
would seem to be the proper one to sell such securities as are sought
by investors of capital. The bonds were sold at a rate above par,
and the very best place to sell them would seem to be that place
where there was money seeking investment.

The answer does not allege that the notice given of the sale was
too short, but only complains that the sale was made at a time
when there was a stringency in the money market.

As the plaintiff had the legal right to sell, it was not required to
wait until the money market was better. The risks of fluctuations
in the market the parties must be held to have contemplated when
the pledge and debt were made, and if a sale became necessary, the
defendant was only entitled to have it made at public auction at a
proper place and after reasonable notice.

The court, under the view we have of the case, did not err in

sustaining the demurrers in reference to any of the matters we have considered.

We are of opinion, however, that the court did err in sustaining the demurrer to so much of the answer as denied that the defendant had agreed to pay eight per cent. interest upon the loans after demand for payment was made, and alleged that such rate of interest was to be paid only after the 1st of October, 1881. Upon a part of the loan interest was computed from September 1st, and upon the residue from September 6, 1881, at the rate of eight per cent. per annum, and for this error of the court the judgment will be reversed and the cause remanded, unless the defendant in error files in this court, within five days, a *remittitur* of all interest at a higher rate than six per cent. per annum for the period prior to October 1, 1881.

If this is done, the judgment will be affirmed at the cost of the defendant in error.

AFFIRMED.

[Opinion delivered February 10, 1883.]

Chief Justice WILLIE did not sit in this case.

[NOTE.— The defendant in error filed the *remittitur* on the day when the opinion was delivered.— REPORTER.]