## CELADA v. A. MATHIAS & CO. (No. 1697.)*

(Court of Civil Appeals of Texas. El Paso. Jan. 29, 1925. Rehearing Denied Feb. 19, 1925.)

1. **Evidence ⬤═396—Parol evidence admissible to show that check received as collateral to secure payment of account.**

Parol evidence was admissible to show that check drawn on deposit of Mexican money and subsequently certified by bank was not received as payment of an account, but as collateral to secure payment thereof; delivery of check and its certification being but a convenient method of carrying pledge into effect.

2. **Pledges ⬤═31(1)—Certification of check by pledgee held not to constitute a conversion of its proceeds.**

Where check was not delivered by defendant to plaintiffs in payment for merchandise, but as a pledge of Mexican money in bank, plaintiffs' act, in procuring certification of check without defendant's consent, did not amount to a conversion of its proceeds.

3. **Pledges ⬤═16(3)—Evidence held to show that pledgee agreed to return Mexican money to pledgor on payment of account in American money.**

Evidence *held* to show that, under terms of pledge, pledgee agreed to hold check for Mexican money pledged to secure account, and to return same to pledgor on payment of account in American money.

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction April 15, 1925.

**4. Pledges** ⊘⇒53 — **Pledgee may foreclose pledge by judicial sale, or sell without judicial process.**

In absence of an express agreement, pledgee may sue and foreclose pledge by judicial sale, or may sell without judicial process after giving reasonable notice to pledgor.

**5. Pledges** ⊘⇒53—**Property pledged is indicative of disposition which pledgee is authorized to make.**

Property pledged is indicative of disposition which pledgee is authorized to make of it, and, where pledge was of check, pledgee might have collected checks on maturity of secured account and applied proceeds on debt.

**6. Pledges** ⊘⇒53—**Pledgee's suit to foreclose pledge instead of collecting pledged check held proper.**

Where check on deposit in Mexican money was pledged to secure payment for merchandise, which check pledgee agreed to hold and return to pledgor on payment of account in American money, on failure to pay account, pledgee might foreclose pledge instead of collecting check and applying proceeds to payment of debt.

**7. Pledges** ⊘⇒57 — **Decree of foreclosure of pledge held sufficient.**

Decree, foreclosing plaintiffs' lien on Mexican money, pledged to secure payment of account, and ordering money sold to pay indebtedness, *held* sufficient, under Rev St. art. 2000, as meaning that statutory order of sale should issue with authority to collect any deficiency on judgment out of any other property of defendant.

**8. Appeal and error** ⊘⇒1033(8) — **Defendant could not complain of failure of decree of foreclosure of pledge to provide for deficiency execution.**

Failure of decree of foreclosure of pledge to provide in express terms for deficiency execution, under Rev. St. art. 2000, was error in favor of defendant of which he could not complain.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Albert Mathias & Co. against Juan Celada and another, in which the First National Bank of El Paso and another were garnished. Judgment for plaintiff against defendant Celada, and he appeals. Affirmed.

Waters Davis and W. H. Fryer, both of El Paso, for appellant.

R. F. Burges and W. M. Coldwell, both of El Paso, for appellee.

### Statement of Case.

HIGGINS, J. For the purposes of the appeal the nature and result of this suit may be thus stated: The suit was brought December 8, 1914, by the appellees Albert Mathias and David Cohen, engaged in business under the partnership name of Albert Mathias & Co.

The amended petition declares upon a verified open account in the sum of $2,028.53 for goods, wares, and merchandise sold and delivered to appellant Juan Celada in July, 1914, and to foreclose a lien upon $6,150 in Mexican money belonging to appellant deposited with the City National Bank of El Paso, Tex. It was alleged that the goods were to be paid for in 60 days, and to secure such payment Celada gave appellees his check payable to appellees for 6,150 Mexican dollars, drawn upon said bank, which check upon its receipt was presented by appellees to the bank to be certified and the same was certified and returned to appellees. The bank was joined as a party defendant. The plaintiffs also sued out garnishment proceedings against the First National Bank of El Paso and Trueba-Zozaya, Inc. Appellant pleaded that the above-mentioned check was delivered to and accepted by appellees in payment of the goods. Other matters pleaded by him need not be detailed; the nature thereof being sufficiently indicated in the course of the opinion. The bank answered "that it now has the sum of 6,150 Mexican dollars in its possession to the credit of J. Celada, and that on the 10th day of July, 1914, it certified to check No. 18, drawn on it by the said J. Celada for the sum of 6,150 Mexican dollars, which check was payable to the order of Albert Mathias, and, by the terms of the said certificate, the said City National Bank of El Paso, Tex., agreed to pay the said check when properly indorsed; and this defendant says that it always has been and now is ready to pay the said check on presentation, when properly indorsed."

The jury found that the goods, wares, and merchandise were sold on a 60-day credit, with the agreement that the Mexican money called for by the check introduced in evidence should be held as security for payment of the purchase price.

Judgment was rendered in the plaintiff's favor against Celada for the sum sued for, with interest from September 12, 1914. Judgment of foreclosure was also rendered upon said Mexican money and the same "ordered sold to pay said indebtedness." The bank was discharged without day. As to the garnishees, it was ordered that the plaintiffs "proceed in such garnishment causes as provided by law."

### Opinion.

The order in which the questions raised by the appeal are presented in the brief will not be followed, and the various assignments and propositions will be passed upon in the order regarded by the court as most logical and convenient for their disposition.

[1] It is contended that the delivery of the check to appellees and its subsequent certification by the bank rendered it incompetent for appellees to show by parol that such check was not received as a payment of the

account, but as collateral to secure the payment thereof, because such testimony varies and contradicts the terms of a written contract. We find ourselves unable to perceive the application of the parol evidence rule which the appellant seeks to apply. It may be true, as asserted by appellant, that, when the holder of a check procures its acceptance or certification by the drawee, the drawer is released from liability thereon and the holder's right of action is against the drawee, but appellees' suit is not to recover upon the check. It is simply to recover upon an open account the payment of which, according to appellees' theory, it was agreed should be secured by Mexican money owned by appellant and deposited in the City National Bank. The delivery of the check and its certification was but a convenient method of carrying into effect the agreement between the parties. It was simply a pledge, the terms of which rested in parol, and we cannot see how parol evidence of the pledge contract in any wise conflicts with the rule forbidding the introduction of parol evidence to alter, vary, or contradict the terms of a written contract.

[2] Nor do we concur in the view that the action of Mathias & Co., in procuring the certification of the check without appellant's consent, amounted to a conversion of the proceeds thereof. The testimony is to the effect that Celada agreed to secure the account with the Mexican money which he had in the bank and in pursuance of this agreement Celada drew and delivered the check in question. Immediately thereafter Mathias & Co. had the bank to certify it. In the absence of an agreement to the contrary, and none is shown, Mathias & Co. had implied authority to procure the certification of the check. But for such certification the funds remained subject to other checks which Celada might draw and obviously Mathias & Co. had no other way of safeguarding their right to the fund pledged.

For this reason those propositions are overruled which assert that, by procuring the certification of the check, Mathias & Co. converted the amount for which it was drawn, and that appellant has the right to offset the same against the account sued upon.

Appellant further asserts: First, that, inasmuch as the property pledged was Mexican money readily convertible into American money, it was the duty of appellees to immediately convert it into cash, instead of bringing suit to have it seized and sold at sheriff's sale; second, that—

"Where a pledgee permits the pledged property to become lost through limitation or the insolvency of those liable for its payment, the pledgor may offset the value of the pledged property against the pledgee's recovery."

Albert Mathias, one of the appellees, testified:

"When Mr. Celada came to deposit the money, he wanted to know what the amount was. I called for the amount; it was entered in the books in the shipping department, and they gave me the amount of $2,020 or something, and Mr. Celada came into the office, I was sitting at my desk and he was sitting right next to me, and Lawrence Calisher was at the desk, and I think Miss Alma Johnson was at her desk, and told him the amount and figured it out, and he gave me as a deposit the 6,150 pesos. * * * When the amount was ascertained, he was about to make out the check, and I told him, 'Mr. Celada, you are going to make a mistake. If I was in your place, I. wouldn't hold that Mexican money, because it has been going down, and as fast as we receive Mexican bills from other customers we sell it, just as fast as we can, because I doubt whether that money will go up any at all; I think it will probably go lower before it goes up.' He told me then, 'That money cost me 45 cents on the dollar, and I am not going to sell it until it is back there, and I don't want you to sell it either, whether it goes up or goes down. When I return from Sinaloa, I will bring you American money, and you return me what I leave you.' He asked me what time I would give him to pay this, I told him we ordinarily give 60 days. He agreed to that, it would be satisfactory, he would come in 60 days and bring the American money. * * *

"At the time Mr. Celada delivered this check to me, I told him, 'Mr. Celada, you are making a mistake. Why don't you exchange this Mexican money, just like we do, and get American money for it now? Don't wait, because this money isn't going up; I am sure it will go down more and more,' and he told me, 'No, sir; I don't want to exchange that money; I don't want you to exchange it; it don't make any difference whether it goes up or down— that money cost me 45 cents, and I am not going to sell it until I get that—I am not going to lose on it.' I didn't cash that check when I received it, because Mr. Celada had told me that he didn't want me to cash it; he wanted to keep that money in the bank. The agreement between Mr. Celada and myself was that I should hold it, and when he returned from Mexico that he would bring me American money, and that I must give him then the Mexican money—the check. * * *

"I accepted an amount which was exactly the equal, according to my view, of the value of Mexican money on that day, in other words, $2,028.53, on the day of the purchase, was worth 6,150 pesos in Mexican money. I felt in my mind that Mexican money was going down, and I told Mr. Celada. I was quite sure that it would go down, but I am apt to make mistakes. * * *

"Absolutely, I advised him strongly against holding that money. I took that money as security for $2,028.53. * * *

"Mr. Celada said he didn't want to sell his Mexican money; this represents these Mexican bills. I state that Mr. Celada insisted that I keep these very bills; that was my contract with him. As to whether they were taken out of his hands when I had the check certified— well, he had them on deposit—this check shows that. Yes, sir, I know what the effect of certifying a check is. He couldn't get the money out; and couldn't get those bills out.
* * *

"I didn't cash that check at the end of 60 days, and get the value of the money, because Mr. Celada distinctly instructed me not to; that he would come back and bring the American money, and I must have his money. As to whether my contract was to hold that check for the rest of my life—I am still holding it. I don't know whether I will hold it for the rest of my life or not; it isn't worth anything now. We had no specific contract; we weren't talking about the rest of my life, except he would return from Mexico and bring American money; he didn't want me to sell it whether it went up or down; he wouldn't sell until it was worth 45 cents. He got 60 days' time; I expected him to return in 60 days. If I had cashed the check at the end of 60 days, I might have taken a chance of losing. The money wasn't worth it, and if it had gone up, Mr. Celada would come and say, 'I told you not to cash the check; now you pay me the difference.' If I wanted to cash his check at the end of 60 days, I would have to take what it was worth, if it was 20 cents less than 45, and by the time Mr. Celada come and says, 'I want my money—that check,' and I had cashed it at 25 cents, and by the time he came it was back to 45 cents, he would have demanded 20 cents difference. I didn't say I contracted to hold that 60 days; I said we gave him 60 days' time on the merchandise. There was no specific understanding about how long we were to hold it. There was no contract between me and the defendant how long I would hold that money; I was to hold it until he came and would bring me the American money. There was no specific contract as to the length of time I would hold his check or the Mexican money. * * * *"

There is other testimony in the record corroborating Mr. Mathias' version of the agreement between the parties, but there is no occasion to quote it.

[3] The quoted testimony of Mathias is a complete reply to the first contention, because under the terms of the pledge Mathias agreed to hold the Mexican money and return the same to appellant upon the latter paying the account in American money. The second contention involves an attack upon the action of appellees in bringing suit to foreclose instead of collecting the check at the expiration of the 60 days and applying the proceeds to the payment of the debt.

The concrete facts pleaded and the evidence show the hypothecation by appellant of his check for 6,150 Mexican pesos to the order of Albert Mathias & Co. drawn upon the City National Bank to secure the payment of his account. The record is silent as to any express agreement between the parties as to the manner in which appellee should proceed in case Celada did not return and pay his indebtedness in 60 days in American money as Mathias testified he agreed to do.

[4] The general rule is that, in the absence of an express agreement regulating the matter, a pledgee may sue and foreclose by judicial sale, or he may sell without judicial process after giving reasonable notice to the pledgor. Luckett v. Townsend, 3 Tex.

119, 49 Am. Dec. 723; King v. T. B. & Ins. Co., 58 Tex. 669.

[5] It is true, as asserted by appellant, the property pledged is indicative of the disposition which the pledgee is authorized to make of it (King v. T. B. & Ins. Co., supra), and appellee had the right to collect the check at the maturity of the account and apply the proceeds to the payment of the debt; but this remedy was not exclusive.

[6] In this case appellees had three available remedies for realizing upon their security. They were concurrent and the appellees had the right to resort to either of them. There is nothing in the record which would preclude the appellees from adopting the one which they deemed best for their own protection. They filed suit within a short time after the maturity of their account and the long delay in the disposition of the suit is evidently due in great measure to inability to secure personal service upon appellant until June 27, 1921; he being a resident of Mexico.

Another proposition advanced is that—

"The pledgee of personal property given to secure the payment of a debt cannot recover the debt and foreclose his lien without producing the pledged property, or showing that it has been lost through no negligence on his part."

This proposition has no application in view of the answer of the bank and the proof that the check is within the control of the appellees and subject to the judgment of the court. For the same reason the fifth and sixth propositions are overruled.

[7] The decree of foreclosure simply forecloses the plaintiffs' lien and orders the pesos sold to pay the indebtedness. The appellant's first proposition is: A judgment foreclosing a lien is void, unless it provides "that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment; and, if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to make the money, or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions," as provided by article 2000, R. S.

[8] The judgment orders the sale of the property and this can have no other meaning except that the statutory order of sale shall issue with authority to collect any deficiency upon the judgment out of any other property of the defendant as in the case of ordinary executions. Ryan v. Raley, 48 Tex. Civ. App. 187, 106 S. W. 750, in which a writ of error was refused. Furthermore, article 2000, R. S., was enacted for the benefit of the plaintiffs in judgment, and, if the judgment in question does not give the plaintiffs the full relief to which they are entitled, it is an er-

ror in favor of the appellant and he cannot complain.

As to some defendants, it is a matter of substantial right that the judgment · conform to article 2000, as in the case of Frankel v. Byers, 71 Tex. 308, 9 S. W. 160, but, under the facts of the present case, the appellant has no cause for complaint because the judgment does not in express terms provide for a deficiency execution.

There are some other objections to the judgment urged, but we deem it unnecessary to discuss the same in detail. The errors, if any, are against the appellees; are harmless as to the appellant, and therefore afford no ground for reversal.

Affirmed.