**HURLOCK et al. v. MITCHELL et al.**

No. 10281.

Court of Civil Appeals of Texas. Galveston.

Nov. 12, 1936.

Rehearing Denied Dec. 10, 1936.

Ralph Walton, of Houston, for appellants.

Baker Botts, Andrews & Wharton, Palmer Hutcheson and Jno. T. McCullough, all of Houston, for appellee bank.

Berry, Stevens & Berry, of Houston, for appellee Jerry A. Mitchell.

GRAVES, Justice.

As finally tried out upon the ultimate ones of what had been quite a network of successive pleadings among and between the various parties (a number of whom en route had dropped out), this cause was reduced to a simple one wherein appellee Jerry Mitchell sought cancellation of a $14,025 second lien note he had given the appellants the Hurlocks in part payment for the El Tovar apartments in the city of Houston, because of their fraudulent misrepresentations as to its value alleged to have induced the purchase, together with further claimed consequential damage to himself from such fraud, his coappellee, the Second National Bank, being also counted against for the cancellation under averment that it had become the pledgee of his note as collateral security for a debt the Hurlocks owed it under the terms of a written collateral agreement between those parties for that purpose, but that the bank had had both actual and constructive notice of the fraud so perpetrated upon him by the Hurlocks in inducing his execution of the note to them at the time it became such pledgee thereof, hence it had not become a bona fide holder thereof for value before maturity.

The learned trial court submitted to a jury on special issues the question of whether or not there had been any such fraud in the procurement of the note by appellants as the appellee Mitchell charged, which were all answered in the negative; thereupon the court ruled as a matter of law that the appellee bank had been a bona fide holder of Mitchell's note, and that it was entitled to judgment against the Hurlocks for the balance then owing on their own note to it, and that it was further entitled—pursuant to the express terms of the written pledge-agreement under which it had so acquired the Mitchell note from the Hurlocks as collateral security for their indebtedness to it, the validity of which pledge-agreement Mitchell himself admitted—to a foreclosure upon this Mitchell note itself both against the Hurlocks as its payee-assignor and against Mitchell, its maker; judgment accordingly was entered in general substance sufficient for the purpose of this opinion as follows:

In section I the court rendered judgment in favor of appellee bank and against the Hurlocks on their note and, as security for this debt, established and foreclosed the bank's pledge-lien upon certain other collateral securities. In section II the court established and confirmed the rights of the bank as bona fide pledgee for value of the Mitchell note, foreclosed its pledge-lien thereon, ordered the note sold, and decreed that the purchaser of the Mitchell obligation should be subrogated to the judgment in favor of Maurice H. Hurlock against Mitchell, rendered in section III of the judgment. In section III the court rendered judgment in favor of Maurice H. Hurlock against Mitchell on Mitchell's note; this portion of the decree reading

as follows, the italics being added here: "It is further ordered, adjudged and decreed by the Court that M. H. Hurlock, subject to the lien established in Part II of this decree in favor of Second National Bank, have and recover of and from Jerry A. Mitchell of Harris County, Texas, the sum of Twenty-three Thousand and Eight Hundred Twenty-eight and 48/100 Dollars, being the principal balance after allowing all credits, unpaid interest accrued to July 15, 1934, and 10 per cent. attorney's fees on said Mitchell promissory note payable to the order of M. H. Hurlock for the original sum of $14,025, with interest on said sum of Twenty-three Thousand Eight Hundred Twenty-eight and 48/100 Dollars from July 15, 1934, until paid at the rate of 10 per cent. per annum, and all costs of court incurred by reason of the controversy between Mitchell and the Hurlocks, *for all of which execution may issue in behalf of the said Hurlocks or in behalf of any purchaser at foreclosure sale, decreed in Part II hereof;* and if the officer in whose hands the execution may be placed shall realize or may obtain any money to apply on said judgment against said Mitchell prior to sale under the foreclosure of the lien decreed in Part II hereof, then he shall pay to Second National Bank first the full amount of the judgment rendered in Part I hereof, and shall pay the balance, if any, to M. H. Hurlock until said Hurlock has received an amount equal to the difference between the judgment rendered in Part I hereof and the judgment in favor of the said M. H. Hurlock against the said Mitchell under the terms of this paragraph, and if the judgment of the Second National Bank against the Hurlocks is fully satisfied hereunder, then all collateral of the Hurlocks remaining in the possession of said Bank shall be returned to the said Hurlocks."

From that determination below the Hurlocks appeal against Mitchell and the bank as appellees.

In this court appellants' controlling contentions may properly be compounded, it is thought, into these two:

(1) That the judgment was erroneous, in that it gave them no right to an execution upon their awarded judgment against Mitchell in section III of the decree—notwithstanding the pledge-agreement that had been so given the bank by them—with recoveries payable to the bank until it was satisfied on its judgment against the appellants.

(2) That the foreclosure on and the ordered sale of the Mitchell note as against them—set out in section II of the decree—was prejudicial to and deprived appellants of a valuable right.

In view of the record, neither of these presentments can be sustained; as concerns the first one, a reading of the italicized portion of the quoted decree demonstrates that appellants are mistaken in their claim, it being there plainly provided not only for a judgment in their favor against Mitchell, but that they should also have their execution against him so long as they continued to be the owners of the Mitchell indebtedness; of course, they could not have their cake and eat it too in that connection by having such an execution—wholly irrespective of their pledge-agreement with the bank, whereby they had expressly conferred upon the latter the right to sell the Mitchell note it had so acquired as collateral for their own indebtedness to it—as their argument seems to imply; wherefore, the issues they raise would seem really to narrow to the single one of whether or not the bank was entitled to the awarded foreclosure upon and right to have sold the Mitchell obligation as so recited in the decree.

There would seem to be no two ways of thinking about that inquiry, under well-settled authorities as applied to such a specifically worded pledge-agreement as this one was; its applicable provision was this: "The holder of said note shall not be liable for failure to collect said collaterals, or for failure to present or protest same, or to give notice or sue thereon, and if this note, or any other liability of the undersigned be not paid at maturity, is hereby authorized, without notice to the undersigned, to sell, either at public or private sale without advertising same or giving any notice thereof, through a broker or otherwise, the whole or any part of said collaterals, with the right of becoming the purchaser and absolute owner thereof at any such sale, and when said collaterals are sold to transfer, endorse, assign, and deliver up the same, and after deducting all costs, attorney's fees and expenses of collection, sale and delivery, including a commission of two and one-half per cent. on the gross amount of proceeds of such sale, to apply the residue of such proceeds to pay any or all of said liabilities as said

holder shall deem proper, returning the surplus, if any, to the undersigned."

As indicated supra, appellants seem to ignore this express provision of their contract to the contrary and to yet argue that the bank nevertheless was not entitled to the direction that the Mitchell note be sold under foreclosure but by right was entitled only to enforce its payment against Mitchell; it is true that some of the authorities, in the absence of a provision in the pledge-agreement itself authorizing the sale, hold that the pledgee of commercial paper—especially such as has only a short time to run—may not himself sell the pledge; but even these seem to recognize with one voice that the parties to such an agreement are free to contract, as was thus specifically done in this instance, for the enforcement of the pledge by sale of the collaterals. Jones on Collateral Security (1912) §§ 652, 655, and 661; California Bank v. Daniel, 36 Ariz. 549, 288 P. 7; King & Co. v. Texas B. & Ins. Co., 58 Tex. 669; 33 Texas Jurisprudence, p. 705, Pledges, § 20; Luckett v. Townsend, 3 Tex. 119, 131, 49 Am.Dec. 723; Celada v. Mathias & Co. (Tex.Civ. App.) 269 S.W. 459, 462; Queen v. Fryer, 232 App.Div. 222, 249 N.Y.S. 651; First Trust Co. v. Potter, 155 Misc. 106, 278 N. Y.S. 847.

■ Not only so, but both the English and Texas law in such special circumstances as here obtain has long further been—even without an agreement giving the right of sale in the pledge-contract—as thus enunciated in the Celada Case, supra: "The general rule is that, in the absence of an express agreement regulating the matter, a pledgee may sue and foreclose by judicial sale, or he may sell without judicial process after giving reasonable notice to the pledgor. Luckett v. Townsend, 3 Tex. 119, 49 Am.Dec. 723; King v. Texas B. & Ins. Co., 58 Tex. 669."

To the same purport are the citations in section 655 from Jones on Collateral Securities, and 33 Texas Jurisprudence, p. 705.

This foreclosure and sale, having been thus ordered by a court of equity having all the parties affected and all the attending facts and circumstances before it, was clearly within its powers.

■ Neither do the other objections to the recitations in the judgment, that is, those confirming the sale under deed of trust of the lots put up as additional security by the Hurlocks for their indebtedness to the bank, and giving effect to the court's finding on the facts that the bank had been an innocent purchaser of the Mitchell note without knowledge or notice of any claimed fraud affecting it, hence was entitled to have its rights in that note protected, irrespective of whether or not there was any liability of Mitchell thereon to the Hurlocks; there was plenty of evidence in the record to sustain such confirmation of the sale of the lots, and since the undisputed proof further showed that the bank had credited on its debt against the Hurlocks the $2,400 acknowledged as proceeds from that sale, it was not inappropriate in the protection of the bank's rights that that sale be confirmed, as was done.

The phrase in the decree (embodied in paragraph VII thereof), and termed "surplusage" by the appellants, seems to have been inserted merely for the purpose of rendering specific the court's adjudication that the bank had been such a bona fide holder for value of the Mitchell note, and, as such, entitled to have its rights as pledgee thereof protected, irrespective of the ultimate outcome of the controversy between the Hurlocks and Mitchell over whether or not fraud had, prior to the acquisition of the bank's rights therein, attended the passing of that note between these parties.

This disposition of the appeal as between the Hurlocks and the bank obviates any discussion as affects appellee Mitchell, since, to quote his own brief filed here: "* * * he recognizes that if the judgment is affirmed as between the Second National Bank of Houston and the defendants Hurlocks, his defenses as against the defendants Hurlocks asserted in the trial are precluded, the Bank holding his note as an innocent pledgee for value to secure the payment of the Hurlocks' note upon which judgment has been rendered against him in favor of said Bank."

Without further discussion, the judgment will be affirmed.

Affirmed.