## JAMES MILLER, Respondent, v. THE PEOPLES SAVING BANK, Appellant.

**Kansas City Court of Appeals, May 22, 1916.**

1. **REPLEVIN: Bills and Notes: Agency.** An agent authorized merely to collect a note has no implied authority to accept another note in payment, and, if he does, his principal will not be bound unless, with full knowledge of the facts, he ratifies such unauthorized act of his agent.

2. ——: ——: ——.  The holder of a negotiable note, indorsed in blank before it is due by the payee is prima facie

the owner of it, and he is presumed to hold it in good faith for value before maturity and without notice.

3. ———: ———: ———. Where the title to a negotiable promissory note is defective, the burden is upon the holder to show that he took the note in good faith for value and without any notice of defect in title.

4. INSTRUCTIONS: Wrongful Hypothesis. An instruction which is entirely unsupported by evidence, of defendant having claim on the note when the holder, without knowledge of such claim, obtained possession, is erroneous.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED.

*Scott J. Miller* for respondent.

*Frank Sheetz* and *Paul D. Kitt* for appellant.

JOHNSON, J.—This is a suit in replevin, begun September 13, 1913, to recover the possession of a negotiable promissory note executed April 24, 1912, by K. A. Dunn, as maker, and payable one year after date to the order of A. M. Knight at the office of the Gunby Realty Company in Chillicothe. The principal of the note is $2600, and interest has accrued thereon from date at the rate of seven per cent per annum. The note is secured by a deed of trust dated, acknowledged and filed for record April 24, 1912, executed and delivered to J. E. McWilliams, trustee, which conveyed a farm of about 140 acres in Livingston county, the record title to the farm being at the time in K. A. Dunn.

The petition alleges that plaintiff is the absolute owner of said note, is entitled to the immediate possession thereof, that the note is of the value of $2850, that it has not been seized under any process, execution or attachment against the property of plaintiff

and that defendant "got possession of said note without the consent and without the knowledge of the owner, this plaintiff herein, and wrongfully and unlawfully withholds the note and deed of trust securing the same from this plaintiff, pretending to own the same."

Defendant, in its answer, alleges "that it has the note sued for in its possession and is the owner and legal holder thereof and that plaintiff has no right, title or interest therein or thereto." A trial of the issues resulted in the return of the following verdict: "We the jury find that at the time of bringing this suit plaintiff was the owner of and entitled to the possession of the note and deed of trust of $2600 made by K. A. Dunn to A. M. Knight and that the value of said note is the sum of $2600." Motions for a new trial and in arrest of judgment filed by defendant were overruled and defendant appealed.

At the time of the events in controversy plaintiff was a farmer living in Western Iowa. He had lived in Chillicothe, Missouri, for many years, had invested money in farm loans in Livingston county and had transacted the business pertaining to such investments through the agency of the Gunby Realty Company which was the trade name of J. E. McWilliams, a real estate and loan broker doing business in Chillicothe. Among the farm loans purchased and owned by plaintiff were two notes for $1400 and $600 respectively which were secured by a deed of trust on a farm in Livingston county referred to in the evidence as the Rubottom farm. In January, 1912, these notes which were past due were sent by plaintiff to The Gunby Realty Company for collection, together with some other notes. McWilliams had become the owner of the Rubottom farm but had procured its conveyance to Katie Dunn, his bookkeeper and stenographer, the deed referring to her as K. A. Dunn. He had

informed plaintiff by letter of the fact that the farm had been sold, but did not disclose that he had purchased it, and had requested that the loan be renewed but plaintiff denied the request and, as stated, forwarded the notes and deed of trust for collection. April 24, 1912, the principal and interest on these notes plus certain sums McWilliams had collected for plaintiff on other notes amounted to $2569.60, and plaintiff had become indebted to McWilliams in the sum of $10 for a fee paid to an attorney employed in the interest of plaintiff. On that date McWilliams had his stenographer execute the note and deed of trust in controversy to A. M. Knight, a clerk in his office, and under date of April 25th, had Knight indorse the note in blank. He then took the note and deed of trust into his own possession, filed the deed of trust in the recorder's office and had the Rubottom, or, as they are called in the evidence, "Kelly" notes and deed of trust cancelled and released of record and had entries made in his account with plaintiff in his books which indicated the payment of those notes. He did not report to plaintiff the collection of these notes and despite the earnest argument to the contrary, we say the evidence as a whole abundantly supports an inference that he did not collect them and that the entries he made in his books, to which we have just referred, merely expressed his purpose to substitute the Dunn note for the Kelly notes and to induce plaintiff to continue to carry the loan on the Rubottom farm.

On August 14, 1912, plaintiff arrived in Chillicothe and went to McWilliams' office for the purpose of having a settlement with him. According to his testimony McWilliams reported the collections he had made on other notes and that he had made a new loan to K. A. Dunn, the purchaser of the Rubottom farm for $2600, secured by a deed of trust of that farm and

some additional land. There is no question but that the security was adequate (that fact was admitted at the trial) and plaintiff appears to have become satisfied with what McWilliams had done and expressed his willingness to accept the Dunn note and trust deed in payment of the Kelly notes and of the amount due him from other collections. He knew that McWilliams' stenographer was called Katie Dunn, but did not identify her with K. A. Dunn, the owner of the land, and had no knowledge that she was holding the title for McWilliams. Nor did he know that payment of the Kelly notes had been entered up on McWilliams' books. He states that Katie Dunn was present at the settlement and at the request of McWilliams, went to the vault in the office, procured the note and trust deed therefrom and brought them to plaintiff who then and there examined them, announced that he would accept them, and then returned them to McWilliams to keep for him. He did not authorize McWilliams to hypothecate or sell the note. At the same time he left other notes with McWilliams who gave him the following receipt:

"Chillicothe, Mo., Aug. 14, 1912.

"Received of James Miller, Dobson $800 note, Brookshier $3000 and Ware $800 and all papers with same—notes to be renewed and collected. Also $2600 Rubottom loan.

THE GUNBY REALTY Co.,
K. A. D."

In the settlement it was found that the $2600 note overpaid plaintiff in the sum of $40.40 and plaintiff gave McWilliams a check for that amount which was paid in due course.

The testimony of Miss Dunn who was introduced as a witness by plaintiff corroborates him in every essential particular. She stated that when plaintiff called at the office McWilliams directed her to bring

the papers relating to his matters and that she "went in the vault and got them out of a pigeon hole on the south side." She was asked "When you went in the vault you got this note and deed of trust?" and answered, "Yes, sir."

In August, 1913, McWilliams was adjudged insane, and was taken to a sanitarium. Plaintiff who had removed to Nebraska went to Chillicothe and recovered his notes and papers which were found in McWilliams' office, but the note and trust deed in dispute were not there and were afterwards discovered by plaintiff to be in the possession of defendant. His demand that they be delivered to him was refused by defendant and this suit followed.

The evidence of defendant relating to the disposition and possession of the note and trust deed from April 25th to August 14, 1912, flatly contradicts that of plaintiff and raises a conflict of a nature to impugn the veracity either of plaintiff and his witnesses or of defendant's witnesses. McWilliams transacted his banking business with defendant and its president testifies that on April 25, 1912, McWilliams applied for and was granted a loan of $2600 for three months at eight per cent interest, and delivered to the witness for defendant the Dunn note and trust deed as collateral to that loan which was evidenced by McWilliams' promissory note. When this note matured it was renewed, the interest being added to the principal and afterwards it was renewed from time to time until August 6, 1913, when for the first time, a collateral form note was taken from McWilliams which recited the deposit of the Dunn note with defendant as collateral. This note which was dated back to July 24, 1913, was for $2945, the amount of the principal and accrued interest on the original loan of $2600 to McWilliams.

The books of the bank contain entries which tend to support the testimony of the president that a loan of $2600 was made to McWilliams on April 25, 1912, was being carried by the bank at the time McWilliams became insane, and was removed to the sanitarium, and that the Dunn note was deposited with the bank as collateral to that loan. The president testifies most positively that the Dunn note and trust deed remained without interruption in the possession of the bank and were not in the office of McWilliams in August, 1912, on the date the evidence of plaintiff shows they were exhibited to and accepted by him. And counsel for defendant in their opening statement declared: "This $2600 note, gentlemen, that is now in suit was never outside of the Peoples Savings Bank—never."

We call attention to these emphatic utterances because of the argument of defendant's counsel that there is no proof that the note was continuously in the possession of McWilliams until after his settlement with plaintiff and that McWilliams may have temporarily procured the note from the bank on August 14, 1912, and made a fraudulent use of it in his settlement with plaintiff. The evidence will admit of no such inferences. The issues are clean cut and sharply defined. Two conflicting hypothesis are presented, each of which has the support of substantial evidence. That note remained in its pigeon-hole in the vault in McWilliams' office from the day it was signed until August 6, 1913, and of course was there on August 14, 1912; or, McWilliams delivered it to defendant April 25, 1912, as collateral security and plaintiff and Miss Dunn testified falsely when they stated that it was in the possession of McWilliams on August 14, 1912. The evidence will not tolerate the taking of any middle ground between these irreconcilable inferences.

It is enough to say of this controversy that the evidence on each side is substantial and since the verdict of the jury has settled all issues of fact in favor of plaintiff we must accept as true the evidence most favorable to him, together with all reasonable inferences that may be drawn therefrom. Consequently in our consideration of the demurrer to the evidence which defendant argues should have been given, we must assume that the note and trust deed in controversy were in the possession of McWilliams on August 14, 1912, had not then been delivered to defendant as collateral, that plaintiff accepted them on that date and redelivered them to McWilliams to hold as his agent without authority to sell or hypothecate and that defendant did not gain possession of them until August 6, 1913, and then under circumstances strongly indicative of bad faith. The opposite conclusions have strong evidentiary support, but their rejection by the jury removes them from the case as we must view it on the demurrer to the evidence, and the question for our determination is whether or not, on the facts just stated, plaintiff is entitled to recover in an action in replevin.

When plaintiff sent the Rubottom notes to McWilliams for collection, he gave him neither express nor implied authority to renew them or extend them time of their payment. An agent authorized merely to collect a note has no implied authority to accept another note in payment and his principal will not be bound unless with full knowledge of the facts he ratifies such unauthorized act of his agent. [Reinhart Groc. Co. v. Knuckles, 155 S. W. 1105; 172 Mo. App. 627; Buckwalter v. Craig, 55 Mo. 71; Wheeler v. Givan, 65 Mo. 89; Groc. Co. v. Powell, 158 Mo. App. 458; Kansas City Casualty Co. v. Bank, 191 Mo. App. 287; 31 Cyc. 1375; 1 Am. & Eng. Ency. of Law (2 Ed.), 1003.]

The conduct of McWilliams in taking a new note and deed of trust and cancelling the old notes and releasing their security of record was unauthorized but subsequently was ratified by plaintiff. It is true plaintiff was not bound by his acceptance of the note on August 14, 1912, since he did not have knowledge of the vitally important fact that his agent was the real but secret owner of the land and was surreptitiously representing himself in the transaction but when, after knowledge of all the facts came to plaintiff, he ratified his acceptance and demanded possession of the note as his property, he became bound by the acts of McWilliams in taking the note in payment of the Rubottom notes and in releasing the trust deed securing the latter notes. And further plaintiff became responsible for the acts McWilliams performed with reference to the note after August 14, 1912, if they were within the actual or apparent scope of the authority he conferred upon McWilliams as his agent when he redelivered the note indorsed by the payee in blank for his agent to hold for certain purposes, but not for the purposes of sale or hypothecation.

It is not shown that McWilliams disposed of the note to defendant as the agent of plaintiff, but it is argued by defendant that in delivering the note to McWilliams, indorsed in blank, plaintiff invested him with all the appearances and powers of the owner and holder and by placing him in a position where he could deal with the paper as his own, must suffer the loss if his agent abused his trust and converted the note by using it to secure the payment of his own debt.

Section 10004, Revised Statutes 1909, provides that an instrument indorsed in blank is payable to bearer and may be negotiated by delivery, and section 10160, that "bearer" means the person in possession of a bill or note which is payable to bearer and that "holder means the person in possession of it or the bearer thereof."

Under these sections the person in possession of a negotiable instrument is presumed to be the holder thereof and third persons, dealing in good faith with him as such holder, cannot be called to account by the real owner who clothed him with all the *indicia* of true ownership. Such was the rule before the enactment of the Negotiable Instruments Law in this State. "The holder of a negotiable note indorsed in blank by the payee is prima facie the owner of it, and he is presumed to have taken it in good faith for value before maturity and without notice." [Klein v. Vette, 167 Mo. 389; Horton v. Bayne, 52 Mo. 531; Johnson v. McMurry, 72 Mo. 278; Fitzgerald v. Barker, 85 Mo. 13; Mayes v. Robinson, 93 Mo. 122.] So that on August 6, 1913, the date the evidence most favorable to plaintiff tends to show McWilliams delivered the note to defendant, he (McWilliams) was the apparent owner of it, and though the note was overdue, defendant, if acting in good faith, would have been entitled to presume that he had taken the note in good faith for value before maturity and without notice and plaintiff, the true owner, would have been in no position to complain. In Klein v. Vette, supra, the Supreme Court reaffirm the doctrine announced in Lee v. Turner, 89 Mo. l. c. 494, that if the true owner of an overdue negotiable note clothes another with the usual *indicia* of ownership or with full power of disposition and third persons are led into dealing with such apparent owner, they will be protected in their dealings. Their rights are derived from the act of the real owner which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to be vested in the party making the conveyance. [McNeil v. Tenth Nat'l Bank, 46 N. Y. 329; International Bank v. German Bank, 71 Mo. 197.]

But on the hypothesis that defendant did not come into possession of the note until August 6, 1913,

there is ample room in the evidence that it was not misled or moved to take the note by the mistaken confidence which plaintiff, the true owner, reposed in his agent, McWilliams. The note being overdue, defendant could not and did not become its holder in due course (Sec. 10022, R. S. 1909; Investment Co. v. Bruce, 132 Mo. App. 257), and if acting in good faith would have taken the note "subject to the same defenses as if it was non-negotiable." [See 10028, R. S. 1909.] And further, defendant could not be allowed to occupy the position of a holder in due course if it had notice of any defect in the title of McWilliams (Sec. 10022, R. S. 1909) and such notice might consist of actual knowledge of the defect "or knowledge of such facts that his action in taking the instrument amounted to bad faith." [Sec. 10026, R. S. 1909.]

Since it appears that the title of McWilliams was defective, i. e. that he was not the owner but the agent of the owner with limited authority which did not include the right to sell or hypothecate, the burden is on defendant to show that it took the note in good faith, for value, and without any notice of defect in McWilliams' title. [Sec. 10029, R. S. 1909; Bank v. Mills, 143 Mo. App. 269; Bank v. Hanks, 142 Mo. App. 119; Jobes v. Wilson, 140 Mo. App. 292.] Under all the facts and circumstances disclosed it was for the jury to determine whether or not defendant has sufficiently sustained its burden of proof. The inference that defendant had actual knowledge of the defective title of McWilliams, or had knowledge of "such facts that its action in taking the note amounted to bad faith," has a substantial evidentiary foundation and was one the jury were entitled to draw from all the evidence. The demurrer to the evidence was properly overruled.

The principal instruction given at the request of plaintiff was as follows: "The court instructs you, defendant, Bank, claims it got the note in controversy

on April 25, 1912; and that said note never was out of its possession till date of suit; and plaintiff claims that he got said note in his possession, by settlement, on August 14, 1912, and left the same with Chas. E. McWilliams, without any authority to sell or transfer the same. You are, therefore, instructed that if you believe and find from the evidence plaintiff obtained the note, in controversy, without any notice of the bank's claim, if any, they had thereon, or without knowledge, then, unless defendant, Bank, has shown, by the evidence, it came into possession of said note, in due course of business, you will find for plaintiff.''

This instruction erroneously submitted the hypothesis which, as we have shown, is entirely unsupported by evidence, of defendant having a claim (lien) on the note when plaintiff, without knowledge of such lien obtained possession of it on August 14, 1912. The only lien defendant could have had at that time was under the collateral pledge it claims McWilliams made on April 25, 1912. If such pledge was made plaintiff has no case and defendant was not required to show that it came into the possession of the note in due course of business. The only theory upon which the evidence will permit a recovery by plaintiff is that the note remained, unpledged, in McWilliams' hands until August 6, 1913, and that defendant did not come into possession of it on that date in due course of business or in good faith.

Instruction numbered 4 given at the request of plaintiff is subject to the criticism of submitting a question of law to the jury and of not properly defining the issues of fact the jury should solve.

The complaint of defendant against the amendment of its instruction numbered 19, by striking out the reference therein to the presumption of ownership which arises in law from the possession of personal property is answered by referring to the recent decisions of the Supreme Court which hold that where the

facts are fully developed in the evidence, such presumptions take flight and are treated as no longer serviceable.

The point of a variance between the allegation and proof of plaintiff is not well taken. Proof that plaintiff subsequently ratified the unauthorized act of his agent McWilliams, in taking the Dunn note in payment of the Rubottom notes, was proof of the allegation that "on the 24th day of April 1912 (the date of the Dunn note) he was the owner of one promissory note of $2600" etc., since in ratifying the act of his agent, plaintiff adopted it as of the date of its performance.

In view of a retrial of the case the objection to the form of the verdict and judgment need not be discussed as we assume that the subject of the objection will not recur.

The judgment is reversed and the cause remanded. All concur.