CHARLES H. WILLIAMS, RESPONDENT, v. FRED SCHMELTZ, APPELLANT.*

Kansas City Court of Appeals. March 4, 1929.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, section 537, p. 358, n. 89; section 1291, p. 983, n. 45; p. 984, n. 49; section 1363, p. 1055, n. 72; section 1376, p. 1061, n. 61; Trial, 38Cyc, p. 1335, n. 36.

*Robert E. Rooney* for respondent.

*Frank G. Warren* for appellant.

LEE, C.—This is a suit on a promissory note. Plaintiff's claim of title is that he acquired it for value by delivery from his father, Eli P. Williams, who in turn acquired it by endorsement from the original payee, L. K. Flanagan.

Defendant contends first that there was not proper proof of Flanagan's endorsement; secondly, that in any event Eli P. Williams acquired the note from Flanagan merely as security for another obligation and had not acquired absolute title; and thirdly, that Charles H. Williams, the plaintiff, is not a holder in due course, and can therefore be met with any defenses to an action on the note which existed against his assignor, Eli P. Williams.

The action was first brought before a justice of the peace, who gave judgment for defendant. Plaintiff appealed to the circuit court, where a jury was waived and the whole case tried before the court, who gave judgment for plaintiff, and defendant thereupon appealed to this court. There are therefore no formal pleadings except the statement filed before the justice of the peace, as follows:

"(Omitting formal parts) 'to money due as holder for value before maturity of the note copied below:

"'500                         Kansas City, Mo., July 27, 1923.

"'Eighteen months after date I promise to pay to the order of L. K. Flanagan, Five Hundred Dollars for value received, negotiable and payable without defalcation or discount and with interest from date at the rate of 6% per annum.

"'FRED SCHMELTZ.'

"Indorsed on back 'L. K. Flanagan, 2722 Olive, 7/27/1923' 10c Revenue Cancelled.

"Principal asked for $500 Interest at 6% from 7/27/1923."

At the trial in the circuit court plaintiff identified a paper marked Exhibit 1 as the note being sued upon; whereupon, his attorney said, "We offer the note marked Exhibit 1 in evidence." The offer did not in terms include the endorsement of L. K. Flanagan, which, however, appeared upon the back of the note as introduced as above shown, and must be held to have constituted a part of the exhibit.

1. Defendant contends there was no proper proof of the endorsement and that such proof must be by evidence *aliunde* the endorsement. The case of Worrell v. Roberts, 58 Mo. App. 197, and the case of Hugumin v. Hinds, 97 Mo. App. 346, 71 S. W. 479, hold that the mere exhibition of the endorsement is not sufficient proof thereof, if objected to, but do not hold that the proof would be insufficient in the absence of objection. In the case of Nance v. Hayward, 183 Mo. App. 217, 170 S. W. 429, an endorsement in blank was pleaded. It does not appear that there was any proof whatsoever on the point. The court's opinion states that there was "no evidence to prove endorsement by the payee," and holds that it devolves on the holder of the note to prove the endorsement by evidence *aliunde* the endorsement.

In the case of Dunlap v. Kelly, 105 Mo. App. 1, 78 S. W. 664, plaintiff was the original payee of the note, which by several mesne endorsements had returned to his possession. The court held that he might have sued on his original title as payee, but that having alleged the intermediate endorsements he must prove them as alleged.

None of the foregoing cases, cited by appellant, sustain his position that an exhibition of the endorsement in evidence is insufficient in the absence of objection by defendant.

In addition to the bare exhibition of the endorsement, the witness Eli P. Williams, after testifying that he transferred the note to his son for value, was asked why he did not endorse same, and replied, "Didn't have to, that was already endorsed by the maker." The only endorsement which appeared on the note was that of L. K. Flanagan, the original payee, and the use of the word "maker" instead of "payee" by the witness was evidently a mere slip of the

tongue. Moreover, no objection was made at the time or until this appeal, to the fact of the endorsement or to the sufficiency of its proof. We hold that this contention of appellant is without merit (Baade v. Cramer (Mo.), 213 S. W. 121), and that the endorsement was sufficient to support future negotiation by delivery. [R. S. 1919, secs. 820, 833; Carter v. Butler, 264 Mo. 306, 174 S. W. 399.]

2. Eli P. Williams testified that the note was received by him from Flanagan in connection with a contract which was identified as Exhibit A. He further testified that he knew he was holding the note as a pledge, but stated that he had thought and still thought that he had a right to sell it to his son. Defendant offered Exhibit A in evidence, to which plaintiff objected.

"THE COURT: That would be admissible if you had any evidence here outside of suspicion, but you have no testimony except the unusual transaction. I don't believe the contract is admissible until you make some showing. I don't believe you have made it yet, although I appreciate the difficulty of making a showing of this kind.

"MR. WARREN: I am offering this exhibit at this time for the purpose of showing to the court that this note at the time it was alleged to have been transferred to the plaintiff was, in realty, in the possession of Eli. P. Williams, who held the same as pledgee and not as owner; that he had no right to dispose of it.

"MR. ROONEY: We object to the introduction of the evidence for the reason it's incompetent, irrelevant and immaterial, showing on its face to be a contract between parties not parties to this suit, and the contents of said contract not, under the evidence, being in any manner binding upon the plaintiff in this case.

"THE COURT: The objection will be sustained."

The action of the court in sustaining this objection is one of the grounds of defendant's appeal.

A mere pledgee, as distinguished from a mortgagee, does not obtain title to the thing pledged, but only possession, with a possessory lien as security. [31 Cyc. 839.] Upon default in the obligation for securing which the pledge is given, it has been said that he may proceed against the debtor personally on that obligation, or he may enforce the security, either by a foreclosure suit in equity, or by sale of the pledge upon reasonable notice to the debtor. [See Notes to Lucketts v. Townsend, 49 Amer. Dec. 730, 3 Tex. 119.] But "nonpayment of the original debt at the stipulated time does not work a forfeiture of the pledge either by the civil or at the common law." [Richardson v. Ashby, 132 Mo. 238, l. c. 245, 33 S. W. 806.] A stipulation in the pledge that upon such nonpayment the title shall become absolute in the pledgee, is void. [Lucketts v. Townsend, 3 Tex. 119, 49 Am. Dec. 723.] Even where a power of sale is given, such sale must be a fair

one, made in good faith. [Hagan v. Continental National Bank, 182 Mo. 319, 81 S. W. 171, 2 Kent's Comm. 583.]

The nature of Eli P. Williams' interest in the note, therefore, goes to the very essence of his right to sell it. On that point the terms of the contract under which he admitted he held the note (identified as Exhibit A and excluded by the court), were relevant. If any prima-facie evidence of the nature of his title were necessary, as suggested by the court, it was furnished by his admission that he originally received the note merely as a pledge. In the absence of a title beyond that of a bare pledgee, as justification for his sale, the title of which he attempted to pass plaintiff was defective under section 841, Revised Statutes 1919, which reads as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

When the defect in the title of Eli P. Williams, plaintiff's transferor, was thus shown, the burden was then thrown upon plaintiff to prove that he acquired the note as a holder in due course. [R. S. 199, sec. 845; Miller v. The Peoples Savings Bank, 193 Mo. App. 498, 186 S. W. 547; Johnson County Savings Bank v. Mills (Mo. App.), 127 S. W. 425.]

Eli P. Williams testified that he received the note from Flanagan, under the excluded contract identified as Exhibit A.; that about January 1, 1925, he offered to sell the note to his son, plaintiff; that defendant Schmeltz came in to inquire about the note ahead of time "and I thought he done it in a very peculiar way, and I thought he had a kind of look that he didn't expect to pay it. That's what put me on my guard and brought it to my attention; he didn't say so in so many words, but he appeared so."

"Q. So you thought you ought to get it into the hands of an innocent purchaser? A. I thought it was a good piece of property to sell.

.  .  .  .  .  .

"Q. Did you say to your son at the time you sold the note to him that Mr. Schmeltz looked rather peculiar? A. No, I did not.

"Q. Did you say anything to him about it? A. No, sir.

.  .  .  .  .  .

"Q. Did you say anything to your son about it being originally a pledge at all? A. No, sir.

"Q. Just said you had a note here? A. Yes, sir.

"Q. And 'I will sell it to you' or did you say 'I will give it to you for your interest in the Snoddy matter,' or what did you say?

A. I told him I would trade it to him for his interest in the Snoddy matter.

. . . . .

"Q. You did. not say a thing about having held that as a pledge at all? A. No, sir, I did not.

"Q. You knew you were holding it as that? A. Yes.

"Q. Didn't you know you had no right to sell it to your son? A. I thought I did have a right to sell it; still think so."

The evidence further shows that Eli P. Williams made several demands on defendant for payment, that he was the only one who did so, and that upon default it was he who arranged for filing suit on the note. He testified, however, that he did so for plaintiff, Charles H. Williams, but plaintiff himself is silent on that point.

Plaintiff testified that he acquired the note from his father in exchange for a half interested in a $5000 "obligation" of a third party (of which his father already owned the other half interest); that he did not personally demand payment from defendant, and never saw such demand made, but "was satisfied" demand had been made; that he knew nothing of the contract known as Exhibit A; that he took possession of the note at the time he bought it. The elementary question of his assignor's title to the note (the alleged defectiveness of which threw the burden of proof upon plaintiff to show that he was a holder in due course) hinged chiefly on the terms of the contract, known as Exhibit "A," through which that title came. The mere denial by plaintiff of any knowledge of the contract, which had been excluded from evidence at his own objection; thus preventing cross-examination based thereon, was not a sufficient compliance with the burden of proof which the law cast upon him.

The question of whether or not plaintiff. was a holder in due course was an issue in this case, and was one for the trier of the facts under all the competent and relevant evidence offered thereon. It was error in the trial court to exclude Exhibit "A."

The case should therefore be reversed and remanded. *Barnett, C.,* concur.

PER CURIAM:—The foregoing opinion of LEE, C., is approved and adopted as the opinion of this court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.