**HELVERING v. GORDON.**
No. 10697.

Circuit Court of Appeals, Eighth Circuit.
Jan. 29, 1937.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Edgar M. Morsman, Jr., of Omaha, Neb., for respondent.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case comes here on the petition of the Commissioner of Internal Revenue to review a decision of the United States Board of Tax Appeals, which redetermined an alleged deficiency in respondent's income tax for 1930.

The Commissioner determined a deficiency for that year in respondent's income tax in the amount of $2,096.38 for failure to include in his gross income alleged unreported dividend distributions of the Gordon Can Company, a corporation owned by respondent and his wife, Almyra B. Gordon.

The capital stock of the Gordon Can Company, a corporation engaged in manufacturing tin cans, consisted of 990 shares of which the respondent owned 790 shares and his wife 200 shares. Due to the fact that respondent was a close personal friend of C. S. Davis, of the firm of C. S. Davis & Co., from whom the Gordon Can Company purchased tin plate, the business of the company was very profitable. Because of this friendship, Gordon, as president of the Gordon Can Company, was able to purchase from C. S. Davis & Co. tin plate at a price considerably below the prevailing market price.

The Gordon Can Company is located in Omaha, Neb., where it had three large customers. It was believed that if they knew the amount of the corporation's profits they would insist upon a reduction in the prices paid by them for the tin cans manufactured by the company. By reason of a provision in the Revenue Act of 1924 (43 Stat. 293, § 257) making income tax returns open to the public it was possible for these three customers to ascertain the profits earned by the Gordon Can Company.

For the purpose, among other things, of concealing from such customers the large profits of the Gordon Can Company, the respondent and his wife in 1924 organized the Wallace Realty Company, a corporation with a capital stock of 100 shares, 50 of which were owned by respondent and 50 by his wife from the date of incorporation until July 1, 1925, on which date respondent transferred 45 shares to his wife. From then until November 5, 1927, respondent held 5 shares and his wife 95. On that date respondent's wife transferred 50 shares of the stock to the First Trust & Savings Company of Chicago, Ill., in trust for the benefit of herself, her husband, and others, her husband, the respondent, being named a cotrustee.

After the organization of the Wallace Realty Company, in accordance with an arrangement between Gordon and Davis, the difference between the price (approximately the market price) at which the tin plate was billed by C. S. Davis & Co. to the Gordon Can Company and the lower price for which it was actually purchased was rebated to the Wallace Realty Company. Before the organization of the Wallace Realty Company, the tin plate had been purchased directly for the lower price without any rebate, and the profits realized by the Gordon Company were disclosed in its income tax returns.

On February 27, 1926, the day following the enactment of the Revenue Act of 1926 (44 Stat. 9), which repealed the provision of the 1924 Act making income tax returns open to the public the Gordon Can Company wrote to C. S. Davis & Co.:

"We wish to advise you that from now on we will appreciate very much if you will bill tinplate to the Gordon Can Company in the regular way as you used to do. We appreciate the trouble that you were put to in order to figure our commissions but the emergency which caused us to do this has now been repealed, so from now on you may bill the tinplate to us the regular way. We want you to know that we appreciated your cooperation with us."

These instructions were countermanded on November 15, 1926, when C. S. Davis & Co. was advised by the Gordon Can Company to bill the tin plate "on the same basis that you billed them a year ago, sending the commission check to the Wallace Realty Company."

The earnings, dividends paid, federal income taxes paid, organization expenses written off, and the surplus at the end of each taxable year from 1924 to 1929, inclusive, of the Wallace Realty Company were as follows:

The aggregate expenses of the Wallace Realty Company for the same period were $948.86. The company had no earnings for 1930.

On December 12, 1930, the Wallace Realty Company distributed $20,000 as a dividend to its stockholders of record at that time, of which sum Gordon, the respondent, as owner of 5 shares of the capital stock, received $1,000, for which he accounted in his income tax return for that year. On the ground that the $1,000 is all of the total sum distributed received by respondent, the Board of Tax Appeals held that his return was correct. It is the contention of the Commissioner that he constructively received 790/990 of the $20,000 distributed; that is, that he should account for the $20,000 in his income tax return for 1930 on the basis of his stock holdings in the Gordon Can Company. This claim is based upon the ground that the $20,000 were the earnings of and owned by the Gordon Can Company; that the Wallace Realty Company was a mere agent of the Gordon Can Company to receive its profits and to disburse them as directed by the principal; that both corporations were owned, dominated, and directed by the respondent; and that the manipulation of the two corporations was

| Year | Gross Earnings | | Net Income | Dividends Paid | Federal Income Tax Paid | Surplus End of Year |
| --- | --- | --- | --- | --- | --- | --- |
| | Commissions Received From C. S. Davis & Company | Other | | | | |
| 1924 | $ 43,558.48 | ........ | $ 43,480.23 | ........ | ........ | $ 43,480.23 |
| 1925 | 49,422.51 | $ 5,123.39 | 54,268.34 | $ 10,000.00 | $ 5,435.03 | 82,313.54 |
| 1926 | 13,488.28 | 3,641.45 | 16,988.99 | 20,000.00 | 8,665.36 | 70,637.17 |
| 1927 | 19,006.85 | 5,329.77 | 24,149.00 | 40,000.00 | 2,921.47 | 51,864.70 |
| 1928 | 37,369.87 | 1,206.22 | 38,402.42 | 40,000.00 | 4,878.29 | 45,071.88 |
| | | | | | (1) 316.95 | |
| 1929 | ........ | (2)2,703.87 | 2,612.85 | 10,000.00 | ........ | 37,684.73 |
| | 162,845.99 | 18,004.70 | 179,901.83 | 120,000.00 | 22,217.10 | $331,052.25 |

(1) Organization expense written off.
(2) Includes income tax refund of $2,565.93.

a device not only for concealing from the customers of the Gordon Can Company its very large profits, but that it was used at least, also, for evading federal income taxes by the respondent.

The question here for determination is, therefore, whether under the foregoing facts and circumstances the $20,000 distributed to its stockholders by the Wallace Realty Company in 1930 should under the law be taxed as income to the respondent on the basis of his stock holdings in the Gordon Can Company.

Section 22 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 797 (26 U.S.C.A. § 22 and note), in effect at the time in question, defines "gross income" as including "gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid."

Section 115 of the same act (26 U.S.C. A. § 115 and note) provides that, "The term 'dividend' when used in this title [chapter] * * * means *any distribution* made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913." (Italics supplied.)

■ The principle that substance and not form should control in the application of tax laws, United States v. Phellis, 257 U. S. 156, 42 S.Ct. 63, 66 L.Ed. 180; MacQueen Co. v. Commissioner (C.C.A.3) 67 F.(2d) 857, 858; Lonsdale v. Commissioner (C.C.A.8) 32 F.(2d) 537, 539, is pertinent in this case. Tax laws deal with realities and look at the entire transaction, Shoenberg v. Commissioner (C.C.A.8) 77 F.(2d) 446, 449; Helvering v. Security Savings & Commercial Bank (C.C.A.4) 72 F.(2d) 874; Ahles Realty Corporation v. Commissioner (C.C.A.2) 71 F.(2d) 150.

Looking through form to substance, therefore, as we must, apparently no motive for transferring the funds of the can company to the realty company existed after the repeal of the provision in the Revenue Act of 1924 making income tax returns open to the public, unless it was to evade taxation. The only motive suggested as existing prior to that date was to conceal the large profits of the can company from its customers. As we view the case, however, motive is immaterial. The decision must turn upon the effect of

what was done. Simplicity characterized both the thing done and the result accomplished. The entire arrangement was made possible by the facts that Gordon, the respondent, and his wife owned all the stock, and thereby dominated and controlled both the can company and the realty company, and that they were on friendly terms with Davis of the Davis Company from which the can company purchased its raw material. With the co-operation of Davis, every time a payment was made to the Davis Company for tin plate there was added to the actual cost a further sum out of the earnings of the can company. Under Gordon's directions, Davis turned the added amount over to the realty company.

The arrangement so devised and executed was a mere device for siphoning the earnings of the can company out of its treasury and into the realty company, which served merely as a container to hold such earnings until Gordon and his wife should determine to distribute them. By this simple means more than $162,000 of money belonging to the can company was transferred to and held by the realty company for distribution. Transferring these funds through Davis and entering the payments in the books of the can company as cost of tin plate does not alter the situation. The result would be the same had the same amounts of money been deposited directly by the can company with the realty company. The whole plan for the disposition of the earnings belonging to the can company which were diverted to the realty company may very properly be characterized as one of those "anticipatory arrangements" referred to by Mr. Justice Holmes in Lucas v. Earl, 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed. 731, whereby "the fruits are attributed to a different tree from that on which they grew."

It is claimed, however, (1) that even had these earnings remained in the treasury of the Gordon Can Company that company might not have declared a dividend and paid it out in 1930 to its stockholders, and (2) that the earnings now claimed to be income to Gordon as dividends of the can company were never paid to him and that he cannot recover them from the present holders.

■ The first proposition is untenable because the money was actually disbursed in 1930. The formal declaration of a divi-

dend by a corporation is not essential under the tax laws. "Any distribution made by a corporation to its shareholders * * * out of its earnings or profits accumulated after February 28, 1913," is a dividend. Section 115, Revenue Act of 1928 (26 U.S.C.A. § 115 and note); Chattanooga Sav. Bank v. Brewer (C.C.A.6) 17 F.(2d) 79; Spencer v. Lowe (C.C.A.8) 198 F. 961.

■■■ The second proposition, that Gordon never received the money, because it was not paid to him by the realty company, is equally untenable. It is not essential under the income tax laws that a taxpayer actually receive money to which he is entitled before he is required to include it in his income tax returns. Whenever it is available to him and he is authorized to receive it or to direct its payment to some other party, it must be accounted for by him for income tax purposes. Webb v. Commissioner (C.C.A.2) 67 F.(2d) 859; Newman v. Commissioner (C.C.A.10) 41 F.(2d) 743; Dickey v. Burnet (C.C.A.8) 56 F.(2d) 917, 920; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916; Lucas v. Earl, 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed. 731. If having power and control over it during the taxing period he voluntarily places it beyond his reach, he cannot be heard to say that he did not receive it within the period. Mr. Justice Holmes, speaking for the Supreme Court in the Corliss Case, supra, said, "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." As said by Judge Phillips in the Newman Case, supra, "Taxation is an intensely practical matter." And it was said by Mr. Justice Stone in the case of Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 152, 75 L. Ed. 383, that, "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." The government cannot be controlled by the manipulations of the taxpayer's accounts, nor by the shifting of funds from one personally dominated corporation to another, in the enforcement of the tax laws. It is the Commissioner's duty to look through forms to substance and to assess the earnings of corporations to their shareholders in the year such earnings are distributed.

It is further urged by counsel for respondent that the Wallace Realty Company had income other than the rebates or commissions received from the Davis Company; that during the years 1924 to 1929 the rebates totaled $162,845.99; that during the same years taxes paid amounted to $22,217.10 and dividends to $120,000, while income from other sources amounted to $18,004.70; and that surplus on December 21, 1929, was $37,684.73. From this it is argued that the $20,000 dividend paid by that company in 1930 may have included the $18,004.70 of the company's own money derived from sources other than the rebates belonging to the Gordon Can Company.

The argument, so advanced, does not bear analysis. It must be presumed at least that during the years preceding 1930 the Wallace Realty Company in paying out dividends amounting to $120,000 used its own earnings so far as possible and not the money of the Gordon Can Company. Article 622 of Treasury Regulations 74 provided:

"*Source of distribution.*—For the purpose of income taxation every distribution made by a corporation is made out of earnings or profits to the extent thereof and from the most recently accumulated earnings or profits."

Following this rule, the Wallace Realty Company paid all its income from sources other than rebates out before 1930 and had none of the $18,004.70 on hand in 1930. It was stipulated that the Wallace Realty Company had no income in 1930. In 1925 its income from other sources was $5,123.39, which, under the rule, was necessarily included in the $10,000 dividend paid that year. In 1926 the other income was $3,641.45 and it paid a dividend of $20,000. In 1927 the other income was $5,329.77 and the dividend paid $40,000. Likewise in 1928 other income was $1,206.22 and the dividend $40,000. Assuming that dividends paid in any given year were earnings of the preceding year, the realty company had none of its own earnings on hand for the 1930 dividend.

Upon this record it cannot be said that the finding of the Commissioner, that the 1930 dividend was paid from income prop-

erly attributable to the Gordon Can Company, was not sustained by the evidence. His finding must, therefore, be accepted.

The Board of Tax Appeals based its order on the finding that Gordon "is taxable only on the amounts received by him," and that since the Wallace Realty Company did not pay him on the basis of his stock holdings in the Gordon Can Company he "never received such amounts either actually or constructively." In this, we think the Board erred and the order appealed from is accordingly reversed.

Reversed.