ESTATE OF FRANK R. MCDERMAND, JR., DECEASED, HELEN H. NELSON, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74852. Promulgated December 15, 1937.

*William J. Carroll, Esq.,* for the petitioner.
*Clay C. Holmes, Esq.,* and *E. L. Webber, Esq.,* for the respondent.

1140

1142

OPINION.

ARNOLD: The controlling provisions of the statute occur in the last portion of section 302 (g) of the Revenue Act of 1926, which is set out in full in the margin.[1] It is stipulated that respondent has given effect to the $40,000 exemption, and to the payments made pursuant to the agreements of August 8, 1929, and April 26, 1930, in determining the "amount receivable by all other beneficiaries." The question is not as to the proper amount to be included, but whether any amount should be included in determining the value of the gross estate.

It is petitioner's contention that there was no amount receivable by the administratrix as insurance under policies taken out by the decedent upon his own life; that there was no excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life; that the proceeds of the policies here in question were the absolute property of the beneficiary, Helen H. McDermand, subject only to the right of the company to be repaid therefrom the amount of its advances for premiums plus interest and the additional sum of $25,000; that to apply section 302 (g) violates the Constitution and the Fifth Amendment thereof.

Petitioner cites numerous cases which, it is asserted, support her position, but it seems that none of these decided cases involved the exact situation now presented. There is no question here but that decedent personally applied for the policies in question. The

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

applications show this conclusively, and the insurance contracts show that the payment of premiums was primarily decedent's obligation.

Turning from the applications for and policies of insurance to the agreements, hereinabove set forth, we find certain reasons recited therein for the taking out of these policies by the decedent. It is stated that the death of decedent in the next several years "would be a serious loss" to the company. It is further stated that decedent was "desirous of having his life insured in favor of his wife, * * * and *desires the aid of*" the company "*in providing for and paying the premiums on such insurance.*" (Italics supplied.) Following which the parties set forth their mutual covenants; decedent agreed to insure his life in favor of his wife for $174,500 (increased to $200,000 by the supplemental agreement), and the company agreed to pay the premiums. If the parties had stopped there we would have a more difficult question; but there were additional covenants. The company was to pay the premiums until decedent's death, or until he attained 40 years of age. If decedent died before he attained the age of 40 the company was to collect $25,000 insurance and was to be repaid the advances for premiums paid plus interest at 5 percent on each premium payment. The company was protected as to the repayment of these advances by making the beneficiary a trustee of the proceeds to the extent of the company's interest therein, and by the policies being "pledged as collateral security to said payment."

Repayment of the company's advances, in the event the decedent survived the age of 40, was also provided for under the agreement. If decedent survived the age of 40, he and his wife "agree and shall pay" the company, "its successors or assigns, a sum of money equivalent to all sums paid by" the company "to and upon the premiums for insurance aforesaid, together with interest thereon" at 5 percent per annum. Thereafter, no further obligation rested upon the company to pay the premiums, and upon receiving payment for its advances the company "shall have no right, title nor claim in or to said insurance or any of the proceeds arising therefrom."

The terms of this agreement were carried out. Decedent's death occurred less than two years after the agreement was consummated. The company had sought by the contract to protect itself against loss from the death of its president to the extent of $25,000. This protection was secured by the agreements hereinabove set forth, rather than by taking out a policy in its own right upon the life of its chief executive. The company profited from this arrangement because it secured the protection against loss without the cost of the insurance if decedent survived the age of 40. It should be noted that the com-

pany bound itself to pay no part of the insurance premiums. Under the contract, it was to advance the money necessary to pay the premiums, but it was to be repaid a sum equivalent to all premiums paid by it. There was no provision binding the company to pay the premiums on the $25,000 insurance carried on decedent's life for its own benefit. Decedent agreed to repay *all* the advances for premiums made by the company, either out of the proceeds if he died before 40, or personally if he survived 40. His wife, the sole beneficiary, agreed to be bound by this arrangement, which clearly limits the amount of the proceeds that she would receive under the policies. In other words, she agreed to take the net proceeds of the policies after these payments were made to the corporation.

In view of the foregoing analysis it is impossible to view the relationship between the decedent and the company as other than that of debtor and creditor. Every feature of the agreement points to that relationship. Every act of the parties following the execution of the agreement is based upon such relationship. The advances by the company were made to meet decedent's obligations under insurance contracts. These advances were conditioned upon repayment with interest. The repayment was secured by a pledge of the policies as collateral, and the advances were repaid with interest as agreed in the contract. Any other determination of the relationship existing between decedent and the company would be a distortion of the facts.

Petitioner advances a second contention regarding the payment of the premiums to the effect that, if the company did not pay the premiums, the sole beneficiary did pay them out of the proceeds from the insurance policies, which proceeds the parties have stipulated she received in her individual right. This contention is grounded upon a misapprehension of the contractual rights of decedent's widow. The contract provided that, if the insured died prior to attaining the age of 40, the beneficiary should pay out of the insurance proceeds to the company, not individually or in her own right, but as a trustee for the company, the amount advanced for premiums plus interest thereon at 5 percent, and plus the $25,000. The balance only of the proceeds was to be her absolute property. By the contract decedent provided for the trust fund out of which the premiums were to be repaid. The funds used for that purpose did not belong to the beneficiary. Decedent's widow agreed to this disposition of a portion of the insurance proceeds and waived all right thereto by executing the contract.

One of the cases upon which petitioner relies is *Wilson* v. *Crooks*, 52 Fed. (2d) 692. The facts in that decision are distinguishable. There the Kansas City Star Co. paid the premiums on insurance upon the life of one of its principal stockholders. The insurance proceeds were to be used to purchase the stockholder's interest in the Star Co.

upon his death, so that the officers and employees of the Star might be able to purchase the shares formerly owned by said stockholder. This was handled through an insurance trust agreement, with a local bank and trust company as trustee. Upon the stockholder's death the proceeds from said policies were used to buy the stock from his estate. The court denied the contention that payment by the Star was payment by the stockholder of the premiums. The court pointed out that the premiums were paid by the Star for and on behalf of the real beneficiaries, who were the officers and employees of the Star. It was held that, since the stockholder did not pay the premiums and could not divert the proceeds to his estate or to any other than those recipients named in the trust agreement, the proceeds were not includible in his gross estate under section 302 (g).

In *Walker* v. *United States*, 83 Fed. (2d) 103, also cited and relied upon by petitioner, the decedent had six policies outstanding on his life, in each of which his wife was named beneficiary. In four policies decedent reserved the right to change the beneficiary. In the other two there was a survival clause requiring payment to decedent's executors, administrators, or assigns, if his wife predeceased him. On the four policies the beneficiary paid from her own funds slightly more than half of the premiums. The estate tax return included no proceeds from any of the policies. Later the Commissioner included the proceeds from the four policies and collected a tax of $4,872.27. Thereafter the widow filed suit for refund of $3,746.05 upon the ground that the prorated amount of the insurance covered by her contributions to the premiums on these four policies was exempt from tax. The Commissioner denied the claim and pleaded as an offset that an additional tax was due because of his failure to include the proceeds from the other two policies. The court held that the proportion of the proceeds from the four policies purchased by the premiums paid by the beneficiary was not within the intendment of section 302 (g). The court further held, after analyzing the provisions of the two insurance policies, that the proceeds therefrom should not be included in the gross estate and there was no offset as to the refund due decedent's widow.

The principles stated in the *Walker* decision, which arose in the circuit within which petitioner resides, are in no way at variance with our decision. Under the court's decision premiums paid by the beneficiary removed the proceeds pro rata from inclusion in the gross estate. Here, the decedent obligated himself to pay the premium advanced by his company, and the sole beneficiary assented thereto by joining in the contract. This is quite different from the beneficiary, or another party, paying the premiums from his own funds.

Petitioner contends further that there was a sufficient assignment here, the legal effect of which was to divest decedent of all right, title, and interest in the policies and their proceeds and to deprive him of any of the incidents of ownership, citing *Guettel* v. *United States*, 67 Ct. Cls. 613. This argument, and the cited case, go to the question of the assignment of the policies. No assignment is shown by the record, unless the petitioner refers to the pledging of the policies as collateral security for the advances made by the company. This did not divest insured of his rights and privileges under the policies not inconsistent with the pledge. *Clark* v. *Equitable Life Assurance Society*, 133 Fed. 816. The policy provisions regarding the assignments are all to the same effect; they permit assignments, but require a copy of the assignment to be filed with the insurer, and in at least one policy, Midland Life Insurance Co., policy No. 55691, the assignment, to be binding on the insurer, had to be "by an instrument in writing endorsed upon the policy or attached thereto." There was no endorsement on such policy nor an attached writing indicating that any assignment thereof was ever made. Furthermore, if there had in fact been an assignment of these policies, the company could have collected in its own right as assignee. *Guettel* v. *United States*, *supra*, p. 618. There would have been no occasion to return the policies to the beneficiary or to make her trustee for the company's portion thereof.

We can not agree that decedent was divested of all the incidents of ownership with respect to these policies. He pledged the policies to secure the payment of the advances; he did not pass title thereto, but gave a lien on the proceeds in an amount sufficient to repay the advances. *In re Herkimer Mills Co.*, 39 Fed. (2d) 625, 627. Naturally in view of the short period between the time the policies were taken out and decedent's death, there was no cash surrender or loan value built up. But if the policies had been more than three years old there is nothing in the agreements of August 8, 1929, and April 26, 1930, which would have prevented decedent from taking the cash value of the policies or securing a loan. He would have been indebted to the company for the advances, plus interest, but he could have exercised his rights under the policies despite any provisions appearing in the agreements. As we stated in *Bessie M. Ballinger, Executrix*, 23 B. T. A. 1312, 1320, "A power in the decedent to surrender and cancel a policy is one of the 'legal incidents of ownership' referred to by the Supreme Court in the *Chase* case, *supra* [*Chase National Bank* v. *United States*, 278 U. S. 327], and upon the termination of the power by death the beneficiary is freed from the possibility of being cut off by decedent and a transfer within the reach of the taxing power of the Government is thereby effected."

It is our view, therefore, that the proceeds of the six policies, less the amounts deducted by respondent, were properly included in the decedent's gross estate. Cf. *Bank of America National Trust & Savings Assn.* v. *Commissioner*, 90 Fed. (2d) 981, affirming 34 B. T. A. 684.

We are unimpressed by petitioner's argument respecting the unconstitutionality of section 302 (g) when applied to situations like that which exists here. It is our opinion that decedent directly provided for payment of the premiums by contract. We are satisfied that he personally applied for the insurance policies in question, and, with the sole beneficiary, arranged for advances to pay his premiums thereon. By contract he established a debtor-creditor relationship. The performance of this contract was equivalent, for the purposes of the statute in question, of actual payment by decedent from his own funds. No constitutional question is involved, and to suggest one merely beclouds an otherwise clear-cut issue.

*Decision will be entered for the respondent.*